Marson, Appellant, *v.* Philadelphia et al.

Argued May 26, 1941. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Joseph Sharfsin,* with him *Edward I. Cutler, Matthew M. Richman* and *Charles Roisman,* for appellant.

*Abraham L. Shapiro,* with him *Abraham Wernick,* Assistant City Solicitors, and *Francis F. Burch,* City Solicitor, for appellees.

OPINION BY MR. JUSTICE MAXEY, June 30, 1941:

The question to be decided is whether the City of Philadelphia can levy a tax upon the salaries of officers and employees of the Commonwealth.

The appellant is an employee of the Department of Public Assistance, an agency of the Commonwealth of Pennsylvania, engaged in the performance of governmental functions. She is required to reside in Philadelphia. She brought a bill in equity praying that the court issue an injunction restraining appellees from collecting taxes on her income and on the income of others similarly situated.

Section 1 of the so-called "Sterling Act" of August 5, 1932, P. L. 45, empowers the City of Philadelphia to levy taxes on "persons, transactions, occupations, privileges, subjects and personal property, within the limits of such city. . . ." Pursuant to the authority thus given, the City in an ordinance approved December 13, 1939, provided, inter alia, in section 2 for a tax of one and one-half per cent annually on "(a) salaries, wages, commissions and other compensation earned after January 1, 1940, by residents of Philadelphia; and (b) salaries, wages, commissions, and other compensation earned after January 1, 1940, by non-residents in Philadelphia for work done or services performed or rendered in Philadelphia." Section 10 provides that the ordinance shall not apply to any person or property as to whom or which it is beyond the power of City Council to impose the tax or duties provided for in the ordinance.

Appellant contends that because the "Sterling Act" failed to specify employees of the State as being subject

to the tax they are therefore excluded. The court below held that the language of the "Sterling Act" was so "comprehensive and all embracing as to" include the appellant and all others similarly situated, and that the tax applied to State employees residing in Philadelphia.

The question is primarily one of interpretation. The "Statutory Construction Act" of May 28, 1937, P. L. 1019, sec. 51, at page 1023, provides, inter alia: "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the Legislature. . . . When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." This is a statutory expression of an established canon of interpretation. 25 R. C. L. p. 962, sec. 217, says: ". . . The statute must be given its plain and obvious meaning" (citing *U. S. v. Plowman*, 216 U. S. 372, and decisions of the highest courts of many states).

When the City of Philadelphia by its ordinance imposed a tax on the salaries, wages, commissions and other compensation earned after January 1, 1940, by "residents of Philadelphia," it clearly meant *all* residents of that city.

It is the contention of appellant that "if the traditional rule of governmental immunity is still the law in Pennsylvania, the result must be that no municipality in this State can levy a tax upon the salaries of officers and employees of the Commonwealth." The "governmental immunity" invoked is based on a principle applicable only to the taxing relations of the Federal and State Governments. There *is* a doctrine of *implied* limitation of the power of the federal government to tax a state or any of its instrumentalities, and of the power of any state to tax the federal government or any of its instrumentalities. The doctrine stems from *McCulloch v. Maryland*, 4 Wheat. 316, and has frequently received judicial recognition. In *Metcalf & Eddy v. Mitchell*, 269 U. S. 514 (1926), the Supreme Court of

the United States referred to "those decisions holding that the very nature of our constitutional system of dual sovereign government is such as impliedly to prohibit the federal government from taxing the instrumentalities of a state government, and in a similar manner to limit the power of the states to tax the instrumentalities of the federal government. . . . This court has repeatedly held that those agencies through which either government immediately and directly exercises its sovereign powers, are immune from the taxing power of the other." That court cited as examples of these, states' or municipalities' "obligations sold to raise public funds" (citing *Weston v. The City Council of Charleston*, 2 Pet. 449; *Pollack v. Farmers' Loan & Trust Company*, 157 U. S. 429), "investments of public funds in the securities of private corporations, for public purposes (*United States v. Railroad Co.*, 17 Wall. 322), surety bonds exacted by it in the exercise of its police power (*Ambrosini v. U. S.*, 187 U. S. 1)," as being "all so intimately connected with the necessary functions of government, as to fall within the established exemption; and when the instrumentality is of that character, the immunity extends not only to the instrumentality itself but to income derived from it." [1]

---

[1] The areas of "immunity" from taxation by the "other sovereignty" have in recent years been greatly reduced by decisions of the United States Supreme Court.

In *James, State Tax Commissioner, v. Dravo Contracting Co.*, 302 U. S. 134 (1937), the United States Supreme Court held that the state could tax monies received by an independent contractor from the federal government for work done for that government.

In *Helvering, Commissioner of Internal Revenue, v. Gerhardt*, 304 U. S. 405 (1938), the United State Supreme Court held that the salaries of a construction engineer and two assistant general managers, employees of the Port Authority of New York, were taxable by the federal government. Mr. Justice STONE, speaking for that Court, said: "In a period marked by a constant expansion of government activities and the steady multiplication of the complexities of taxing systems, it is perhaps too much to expect that

The reason why the foregoing principle does not apply to the instant case is that here there are no competing claims between state and nation. Furthermore, the State of Pennsylvania is not crippled in its governmental activities by this tax. If it finds itself so crippled, it can take from the City of Philadelphia at any time the authority to tax any of the city's residents who are employees of the government of Pennsylvania. The only power that Philadelphia has to impose any tax on its residents is the power the state gives it in the "Sterling Act." Repeal this act and the power vanishes and the tax falls.

Cooley on Taxation, 4th ed., Vol. 1, sec. 125, says: "The municipal corporations of a state having no in-

---

the judicial pronouncements marking the boundaries of state immunity should present a completely logical pattern."

In *Graves et al., Constituting the State Tax Commission of New York v. New York ex rel. O'Keefe,* 306 U. S. 466 (March 27, 1939), the United States Supreme Court held that the salary of a resident of New York State who was an examining attorney for the Federal Home Owners' Loan Corporation, is subject to non-discriminatory taxation by the state. The court declared that a tax on the salary of an employee of the national government or of a governmental agency imposed no such burden on the national government as to amount to an unconstitutional interference by the one government with the other in the performance of its functions. The court said: "The theory . . . that a tax on income is legally or economically a tax on its source, is no longer tenable." This decision overruled *Collector v. Day,* 11 Wall. 113, and *New York ex rel. Rogers v. Graves,* 299 U. S. 401, in so far as they recognize an implied constitutional immunity from non-discriminatory income taxation of the salaries of officers or employees of the national or state governments or their instrumentalities.

The Public Salary Tax Act of 1939 (411 CCH Par. 50) made compensation for personal services as an officer or employee of a state, a political subdivision thereof, or any agency or instrumentality thereof, for taxable years beginning on and after January 1, 1939, subject to the Federal income tax. This act also consents to the taxation by the states of the income of Federal officers and employees.

herent power to tax must take such power as is conferred under the conditions and limitations that may be prescribed, and only for such purposes as may be expressed. This is fundamental. The power to tax, where delegated by the legislature to a municipality or other local subdivision, is confined to the subjects of taxation enumerated in the delegation of power, and also to the purposes designated in such delegation. . . . Municipal authorities . . . are to assume that they can tax only as the state in its wisdom has thought proper to permit, and if the state has erred in the direction of strictness, the legislature alone can correct the evil."

In *Passenger Railway Co. v. Pittsburg*, 226 Pa. 419, 75 A. 662, this court said: "While taxation is an incident of sovereignty absolutely necessary to maintain government, the authority to impose taxes depends upon express legislative grant and not upon incidental governmental power. There is no such thing as taxation by implication. . . . Taxation is a sovereign state governmental power not possessed by municipalities or municipal divisions unless delegated to them."

The cases of the *Commonwealth v. Mann*, 5 W. & S. 403, and *Com. of Penna., State Employes' Retirement System v. Dauphin County et al.*, 335 Pa. 177, 6 Atl. 2d 870, both cited by appellant, are inapplicable here. In the first case this court held that the salaries of judges, after being fixed by law, could not during their continuance in office be diminished by the legislature because the Constitution expressly forbade such "diminishment." In the second case this court held that real estate owned by the Commonwealth or one of its boards, may not be subjected to taxation by one of its municipal subdivisions, without express statutory authority. We there said: "Subject to constitutional limitations, the elementary premise is that the power to tax vests exclusively in the legislature; it may by express direction delegate segments of the taxing power to municipal

bodies, whose exercise thereof is confined to the power so delegated." In the instant case, it is conceded that the legislature has delegated certain of its taxing power to the City of Philadelphia. The power so expressly delegated is set forth in the third paragraph of this opinion.

Appellant also contends that the enforcement of the ordinance would as against state officers and employees "be sporadic, unequal, absurd, impossible and unreasonable." This proposition is based on the fact (which appellant says "must be taken to be admitted") that the state refuses to deduct any tax on its employees at the source and refuses to furnish a list of state employees. This attitude on the part of the state may increase the difficulties of collecting this tax as against state employees but it does not make the ordinance unconstitutional, nor does it prove that the "Sterling Act" does not authorize the enactment of such an ordinance.

Appellant also contends that the city cannot impose on the state the burden the ordinance places on employers, that burden being the collection of the tax at its source. For failure to carry this burden certain penalties are provided. The appellant says: "The city strives to embrace the Commonwealth within its power and to impose upon the sovereign state the penalties of the ordinance. . . . The creature of the state cannot dictate to its creator."

It must be conceded that when any power issues a "command" to a superior power, that "command" has only the force of a request. The State of Pennsylvania can, if it chooses, ignore the command of this ordinance that it collect from its employees, residing in Philadelphia, this tax. The State can also refuse, if it chooses to do so, the demand for a list of its employees residing in Philadelphia. Its refusal does not make the ordinance invalid, nor does it prove that the legislature never intended by the "Sterling Act" to give the city the power

to enact such an ordinance. Incongruous situations are often encountered in the enforcement of law.[2] In *Hartranft's Appeal*, 85 Pa. 433, this court refused to permit the Court of Quarter Sessions of Allegheny County to issue an attachment for contempt against the Governor of this State because he refused to obey a subpoena to appear before the Grand Jury of that county to testify in respect to riots which had taken place in Pittsburgh in July, 1877. This court declared that the Governor himself was the sole judge of whether he would attend to his duties at the seat of government or answer the official call to come to Pittsburgh. At the trial of Aaron Burr in Richmond in 1807, there was awarded at the request of the defense a subpoena duces tecum directed to the President of the United States requiring him to appear and to bring with him a certain letter from General Wilkinson to himself. President Jefferson refused to appear or to produce the paper. Chief Justice MAR-

---

[2] The thirty-four states which have income tax laws might conceivably meet with some practical difficulties in collecting taxes on the salaries of Federal officials should such officials and the Federal government prove to be non-coöperative in such matters. For example, New York State has an income tax law taxing "the compensation received on or after January 1, 1939, by any individual, for personal service as an officer or employee of the United States or any agency or instrumentality thereof" (L. 1939, Ch. 619). The New York law requires "every withholding agent" (which is defined to include "all employers") to make returns to the New York Tax Commission of complete information concerning amounts paid by such "withholding agents" to any person taxable under Article 16, section 366, subdivision 2 of the New York State Tax Law. Whether New York State could "require" the Federal authorities to obey section 366 became an academic question by reason of a reciprocal arrangement entered into by the respective tax administrators of nation and state to make a mutual exchange of information as to the salaries paid by each sovereignty to its officials who are subject to taxation by either. Whenever such arrangements are entered into by distinct governments or distinct governmental agencies, the practical difficulties conjured up by this appellant disappear.

SHALL refused to issue compulsory process against the President, saying: "The President has assigned no reason whatever for withholding the paper called for. The propriety of withholding it must be decided by himself." If any departmental heads of the State government refuse to comply with any of the provisions of the Philadelphia ordinance now under discussion, it must be presumed that their actions are in accordance with their conceptions of their official duty. (See *Thompson v. The German Valley Railroad Co.*, 22 N. J. Eq. R. 111.)

Appellant's brief says: "The considerations supporting this appeal are that the fundamental laws of this Commonwealth must not be set aside by local authorities, acting upon assumptions of delegated power, and that the efficiency of the State government should not be endangered or impaired by local interference and local burdens." We find in the ordinance challenged no attempted setting aside of the State's fundamental laws and no danger to, or impairment of, the efficiency of the State government.

The decree is affirmed, at appellant's cost.