## Wilkes-Barre Appeal.

426

Argued June 15, 1966. Before Ervin, P. J., Wright, Watkins, Montgomery, Jacobs, Hoffman, and Spaulding, JJ.

*James W. McNulty,* with him *Thomas J. Foley, George L. Fenner, Jr.,* City Solicitor, and *Rosser, McDonald, Marcus & Foley,* for City, appellant.

*Bernard J. Hendrzak,* with him *James Lenahan Brown,* for appellees.

*Arthur Silverblatt,* with him *Howard A. Berman* and *Samuel Nelson,* for appellees.

Opinion by Hoffman, J., September 15, 1966:

This is an appeal from an order of the Court of Quarter Sessions of Luzerne County declaring invalid an earned income tax ordinance of the City of Wilkes-Barre on the grounds that:

(1) the ordinance was adopted on January 10, 1966, under the Act of June 25, 1947, P. L. 1145, as amended, 53 P.S. §6851 et seq., which was specifically repealed by the General Assembly on January 1, 1966; and

(2) the ordinance was not properly advertised in accordance with law.

## I
### Was the ordinance invalid because enacted under a repealed statute?

On December 7, 1965, the City Clerk of Wilkes-Barre was directed by the City Council to advertise the City's intention to impose an income tax. The ordinance was to be enacted under the authority of the Act of June 25, 1947 (P. L. 1145), as amended. On December 8, 15, and 22, 1965, such notice was advertised in the Wilkes-Barre Record.

On Friday, December 31, 1965, Governor Scranton signed into law Act No. 511 known as "The Local Tax Enabling Act," 53 P.S. §§6901-6924, effective January 1, 1966. This act provided in part: "Section 23. Repeals—The Act of June 25, 1947 (P. L. 1145), entitled, as amended . . . is repealed."

On Tuesday, January 4, 1966, at a regular meeting, the Council passed the proposed tax ordinance on first reading. On January 10, 1966, the Council met again and enacted the ordinance after a second and third reading. The ordinance reads in part: "BE IT ORDAINED AND ENACTED BY THE COUNCIL OF THE CITY OF WILKES-BARRE under the authority of the Act of June 25, 1947, (P. L. 1145) AND ITS AMENDMENTS, as follows. . . ."

A municipality has no original power of taxation; a municipal tax ordinance must be authorized by an act of the General Assembly. Should there be a repeal of such an act, the power to tax would also be withdrawn. *Allentown School District Mercantile Tax Case,* 370 Pa. 161, 87 A. 2d 480 (1952); *Marson v. Philadelphia,* 342 Pa. 369, 21 A. 2d 228 (1941). On its face, therefore, the ordinance would appear invalid,

since it was purportedly enacted under the authority of a repealed act.

Before examining this major problem, however, we must consider the significance of the City's failure to comply with the requirement of the 1965 Local Tax Enabling Act which provides: "Each ordinance . . . shall state that it is enacted under the authority of this act, known as 'The Local Tax Enabling Act.' " (§5).

The importance of such a direction was considered in *Pleasant Hills Borough v. Carroll*, 182 Pa. Superior Ct. 102, 125 A. 2d 466 (1956). In that case, a taxpayer contended that the Borough wage tax ordinance was invalid because the ordinance did not contain a statement that it was enacted under the authority of the 1947 taxing act, as required by statute. We held that the requirement of a statement of legislative authority in the ordinance was only directory and not mandatory. We stated further that: "To hold that a provision is directory rather than mandatory, does not mean that it is optional—to be ignored at will. Both mandatory and directory provisions of the legislature are meant to be followed. It is only in the *effect* of non-compliance that a distinction arises. A provision is mandatory when failure to follow it renders the proceedings to which it relates illegal and void; it is directory when the failure to follow it does not invalidate the proceedings."[1] (pp. 106-7)

In the instant case, the City not only failed to recite the proper legislative authority for its actions but, also, referred to a statute which had been repealed.

_____

[1] It is true that in *Pleasant Hills*, supra, we do point out that the Borough had substantially complied with the 1947 Act by inserting the statement of authority in the earlier advertisements. While this fact certainly strengthened the position of the Borough in that case, we are of the opinion that the characterization of the provisions requiring a statement of authority as directory rather than mandatory is, nonetheless, applicable in this case.

This additional error need not prove fatal, however, for it is likewise a general statement of law that a misrecital in an ordinance of the source of power by which the ordinance is passed does not invalidate it if in point of fact the power to enact it existed. *City of Waco v. McCraw*, 127 Tex. 268, 93 S.W. 2d 717 (1936); *Ralston Purina Company v. Acrey*, 220 Ga. 788, 142 S.E. 2d 66 (1965); *Missouri-Kansas-Texas Railroad Company v. Maltsberger*, 189 Okl. 363, 116 P. 2d 977 (1941); *Baltimore v. Ulman*, 79 Md. 469, 30 A. 43 (1894); *State v. Clark*, 88 Idaho 365, 399 P. 2d 955 (1965); 5 McQuillin, Municipal Corporations, §16.14, p. 183 (3d ed. 1949); 62 C.J.S. p. 791.

Thus, the improper reference to the Act of 1947 rather than the Act of 1965 does not invalidate the ordinance so long as the City in fact had the power to enact it in 1966.[2] Neither party disputes that the City had such power. The significant question in this case, therefore, is whether enactment proceedings, which were initiated by the City in 1965, could be continued and concluded in 1966, even though the Legislature, in the interim, had repealed the 1947 act and simultaneously enacted the 1965 act.

In considering this question special note must be taken of §82 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 P.S. §582, which provides: "Whenever a law is repealed and its provisions are at

---

[2] This conclusion is buttressed by our subsequent holding in this opinion that the 1965 statute is a substantial re-enactment of the 1947 statute. Section 82 of the Statutory Construction Act, 46 P.S. §582, provides, in these circumstances, that a reference to the earlier law in any other law shall be construed as a reference to the repealing law. Since the rules of statutory construction are applicable to municipal ordinances, *Donahue v. Zoning Board of Adjustment*, 412 Pa. 332, 194 A. 2d 610 (1963), the reference in the Wilkes-Barre ordinance to the 1947 Act should be construed as a reference to the 1965 Act.

the same time re-enacted in the same or substantially the same terms by the repealing law, the earlier law shall be construed as continued in active operation, and a reference to the earlier law in any other law shall be construed as a reference to the repealing law. All rights and liabilities incurred under such earlier law are preserved and may be enforced.   As amended May 27, 1953, P. L. 240, §2.''

In light of this section, we must consider whether the 1965 Act constitutes a substantial re-enactment of the 1947 Act, so that the earlier statute should be construed to have continued in active operation without any break in its authority.[3]   If so, enactment proceed-

---

[3] In so doing, we reject the conclusion of the lower court that §82 of the Statutory Construction Act would not be applicable even if the 1947 and 1965 Acts were substantially similar. This conclusion was based on the assumption that §82 only serves to protect rights and liabilities incurred under the old act. The lower court held that no such rights had been incurred by Wilkes-Barre, since the ordinance had not been adopted prior to the repeal of the 1947 Act.

While §82, in virtually all Pennsylvania cases, has been employed in the manner suggested by the lower court, the principle upon which it is based is broader. The principle, as indicated in the Source Notes of the Draftsmen of this section, is that the re-enacting law is construed as a continuation of the prior law and not as a new enactment, citing the statutes of seven other States.

The draftsmen also relied on *Harvey v. City of Hazleton*, 81 Pa. Superior Ct. 1 (1923), the holding of which also served as the basis for §81 of the Statutory Construction Act, 46 P.S. §581, which provides: "Whenever a law re-enacts a former law, the provisions common to both laws shall date from their first adoption. Such provisions only of the former law as are omitted from the re-enactment shall be deemed abrogated, and only the new or changed provisions shall be deemed to be the law from the effective date of the re-enactment."

The draftsmen also refer to the outstanding work on statutory interpretation of that day: Endlich, Interpretation of Statutes, §490, p. 693 (1888) which states: "It seems, indeed, to be the general understanding that the re-enactment of an earlier statute

ings begun by the City of Wilkes-Barre under the 1947 Act could be continued and concluded under the 1965 Act. Cf. *Kraus v. Philadelphia*, 265 Pa. 425, 109 A. 226 (1919).

Under the 1947 Act, local taxing authorities were empowered to enact per capita, income, real estate transfer, mercantile, occupation and occupational privilege taxes.

The 1965 Act, in large measure, re-enacts and continues many of the provisions of the 1947 Act. Thus, there is no change from prior law in the types of taxes which may be imposed or in the procedure for levying such taxes. Similarly, there is no change in the maximum rate which may be imposed, nor is there any change in the procedure for appeal from the enactment of any such ordinance. Other provisions relating to the Register for Earned Income Taxes and the Vacation of Tax Ordinances and Resolutions by State Tax Measures are largely unaffected. The provisions for

---

is a continuance, not a repeal of the latter, even though the later act expressly repeals the other. . . . [A] repealing act re-enacting the provisions of the repealed statute, in the same words, is construed to continue them in force without intermission."

A modern work in this area, 1 Sutherland, Statutory Construction, §2035, p. 514, n. 4 (1943), states more directly: "A so-called 'simultaneous repeal and re-enactment' is therefore a misnomer, for there is no repeal by implication effectuated of the original act, and even though the 'repeal' is declared by specific provision in the later enactment the courts will construe the unchanged provisions as being continuously in force."

In short, an act which simultaneously repeals and re-enacts is not just a new act which incidentally preserves rights incurred under the old act. It is, in fact, the old act itself, with perhaps a new title, organization or minor modification. Those provisions which are carried over from the old act date from their first. adoption. Consequently, any action taken under the old act may be continued and concluded under the new act subject to such modifications as it provides. Cf. *Kraus v. Philadelphia*, 265 Pa. 425, 109 A. 226 (1919).

Personal Property, Limitations on Assessment, Joint Agreements among Political Subdivisions, and Tax Limitations have similarly been re-enacted.

There are significant additions in the new act, however, Section 11 of the Act imposes special requirements relating to the auditing of books and records of income tax collectors by public accountants. Section 14, while re-enacting the provisions relating to payments of tax to other political subdivisions in Pennsylvania, establishes a new crediting provision for taxes paid by a Pennsylvania resident to another State or political subdivision located in another State. Section 18 provides for the distress and sale of goods and chattels of the taxpayer. Sections 19 and 20 provide for the collection of delinquent taxes from employers or from the Commonwealth.

The most significant provisions relating to income tax ordinances are contained in §13. On and after January 1, 1966, all of §13 is construed to be a part of every ordinance imposing an income tax. Foremost among the provisions in §13 are definitions which are exclusive for any earned income tax and which may not be altered or changed by any political subdivision levying such tax. These include definitions of "earned income," "net profits," "domicile," "employer," and the like. Subsection II of §13 makes all local income taxes payable on a calendar year basis. All such taxes are regarded as continuing in nature. Subsection III provides for the declaration and payment of net profits and earned income taxes. Included in this subsection are several optional provisions relating to filing dates, declarations of estimated tax, and quarterly payments. Subsection IV sets out requirements for the withholding of taxes by employers. Subsections V, VI and VII outline the specific powers and duties of the income tax officer, including the right to sue for collection of taxes. These subsections also require that the officer

give bond and provide for his compensation. Subsections VIII and IX establish a schedule of fines, penalties and interest for delinquent taxes and for violations of these ordinances.

It is apparent, therefore, that many new provisions are contained in the 1965 Act. Nonetheless, it is our conclusion that the 1965 Act was intended to be and is, in effect, no more than a substantial re-enactment of the 1947 statute.

A brief explanation of the circumstances underlying the enactment of the 1965 Act is necessary for a full understanding of the problem. The 1947 Act served as the authority for income taxes enacted by taxing authorities until 1965. The act itself, however, had been amended some twenty-five times after 1947, not always in a consistent fashion. In addition, many practical difficulties had been encountered in the administration and collection of such taxes. For example, the 1947 Act did not spell out in detail what kinds of earned income should be taxable or how the tax was to be declared, administered and collected. This resulted in varied procedures in many local ordinances and proved particularly onerous to employers with state-wide operations and to employers who had voluntarily agreed to withhold the taxes of employees from other taxing districts.

The legislature sought to meet these difficulties by repealing the often-amended 1947 Act and by providing, in its place, a revised, integrated statute. An examination of the 1965 Act reveals that it is not primarily a new act but is, rather, a revision and consolidation for clarity, certainty and convenience. Thus, as we have indicated, the heart of the statute, those provisions relating to enactment, maximum rate and subjects of taxation, remains unchanged.

Moreover, many of the apparently novel provisions in the 1965 statute are really no more than a codifica-

tion of powers which taxing authorities possessed and employed for many years. Indeed, these provisions often represent a composite of ordinances enacted by local authorities.

Thus the significant definitions in §13 of the 1965 Act follow closely those which are contained in earlier municipal Wage Tax Ordinances.[4]

---

[4] We have reviewed many local ordinances for the purpose of preparing this opinion. While the ordinances of many taxing authorities are similar, we shall, in this opinion, rely largely on those of Pittsburgh, Allentown and Lancaster.

The statute defines "net profits" as: "The net income from the operation of a business, profession, or other activity, except corporations, after provision for all costs and expenses incurred in the conduct thereof, determined either on a cash or accrual basis in accordance with the accounting system used in such business, profession, or other activity, but without deduction of taxes based on income."

Compare the language of the Allentown ordinance: " 'Net Profits'—The net income from the operation of a business, profession or other activity, after provision for all costs and expenses incurred in the conduct thereof, either paid or accrued in accordance with the accounting system used in such business, profession or other activity, but without deduction of taxes based on income."

Again, the statute defines "earned income" as: "Salaries, wages, commissions, bonuses, incentive payments, fees, tips and other compensation received by a person or his personal representative for services rendered, whether directly or through an agent, and whether in cash or in property; not including, however, wages or compensation paid to persons on active military service, periodic payments for sickness and disability other than regular wages received during a period of sickness, disability or retirement or payments arising under workmen's compensation acts, occupational disease acts and similar legislation, or payments commonly recognized as old age benefits, retirement pay or pensions paid to persons retired from service after reaching a specific age or after a stated period of employment or payments commonly known as public assistance, or unemployment compensation payments made by any governmental agency or payments to reimburse expenses or payments made by employers or labor unions for wage and

The statutory provisions for the declaration of net profit taxes are very similar to the provisions in the ordinances of Pittsburgh, Allentown and Lancaster.[5] Similarly, the Act and each of these municipal ordinances provided for either a quarterly or yearly declaration and payment on salaries not subject to withholding.[6]

The provisions in the Act relating to the withholding of taxes, the powers and duties of taxing officers, the right of investigation and inspection and the right to bring suit for collection of taxes do not materially differ from ordinances of Pittsburgh, Allentown and Lancaster. Indeed, the provisions for interest and

salary supplemental programs, including, but not limited to, programs covering hospitalization, sickness, disability or death, supplemental unemployment benefits, strike benefits, social security and retirement."

Compare the language of the Pittsburgh Ordinance: "SALARIES, WAGES, COMMISSIONS AND OTHER COMPENSATION shall include salaries, wages, commissions, bonuses, incentive payments, fees and tips that may accrue or be received by an individual for services rendered, whether directly or through an agent, and whether in cash or in property, but shall not include periodic payments for sick or disability benefits and those commonly recognized as old-age benefits, retirement pay or pensions paid to persons retired from service after reaching a specific age or after a stated period of employment, nor public assistance or unemployment compensation payments, nor any wages or compensation paid by the United States to any person for active service in the Army, Navy or Air Force of the United States, nor any bonus or additional compensation paid by the United States or the Commonwealth of Pennsylvania or any other state for such service."

[5] Some of the ordinances studied did differ from the Act in one respect. The statute requires that a taxpayer who discontinues business must file a final return within thirty days whereas some ordinances required such a filing within fifteen days.

[6] The Allentown and Lancaster ordinances provided for a quarterly declaration and payment based on estimated returns, whereas Pittsburgh's ordinance specified collection on the basis of actual income. The latter method is consistent with the 1965 Act.

penalties in the act and in the ordinances of those taxing authorities are identical. Finally, the provisions for fines and penalties differ only in that most ordinances allow a fine of not more than $300 whereas the statute permits a fine of up to $500.

It appears, therefore, that the legislature has not substantially changed powers already conferred on and exercised by municipalities. The system here superimposed on local ordinances neither expands nor materially alters powers previously possessed by local taxing authorities. Rather, through codification, it insures that a uniform scheme of taxation will be imposed throughout the State, thus alleviating many of the practical difficulties encountered earlier in the administration of ordinances with varying procedures.

The statute does contain some provisions which are genuinely new. These relate primarily to auditing procedures, crediting of taxes, filing of bonds by tax collectors and methods for the collection of delinquent taxes. The most difficult question in this case, is, therefore, whether these provisions so changed the new act that we are precluded from finding that the 1947 Act has been continued in active operation.

It is a settled rule of construction that the legislature will be presumed to have intended what is reasonable and effectual and not what is productive of absurd or anomalous consequences. *Gagliardi v. Ambridge Borough,* 401 Pa. 141, 163 A. 2d 418 (1960); Statutory Construction Act, §52(1), 46 P.S. §552(1).

The legislature was undoubtedly aware that thousands of taxing districts enacted income, occupation, occupational privilege and per capita taxes in 1965 to be effective in 1966. Thus, our cities, boroughs, townships and school districts enacted approximately 1700 earned income tax ordinances last year. If we assume, as the taxpayers argue, that the 1965 Act seriously conflicts with the 1947 Act and, therefore, does not

continue the 1947 Act in active operation, every taxing ordinance passed under the authority of the 1947 Act in 1965 would now be invalid. The new Act was signed into law on December 31, 1965, one day before its effective date. Even if the taxing districts had chosen to re-enact their ordinances in 1966, they could not, as a practical matter, have done so without losing part of the revenue expected in January of that year. It is hardly possible that the legislature, aware of the financial needs of local governing bodies, would enact a statute which would so disrupt the collection of tax revenues. Unquestionably, the legislature contemplated that the 1965 Act should continue the 1947 Act in active operation.

Further support for this conclusion may be found in the last paragraph of §4 of the 1965 Act which states: "For the purpose of this section 4 [relating to advertising] and section 6 [relating to appeals]. of this act, any ordinance enacted pursuant to the act of June 25, 1947, (P. L. 1145), as amended, which is continued by being again passed or adopted and which imposes the same tax or license fee without substantial change, need not be advertised prior to passage or adoption and shall not be considered as levying a tax for the first time under this act." Thus, it clearly appears that the legislature expected that ordinances enacted in 1965 could be continued without substantial change under the 1965 Act, despite the new provisions contained therein.[7]

---

[7] Further support for this conclusion as to legislative intent may be drawn from a study of the new Borough Code, Act of February 1, 1966, P. L. (1965) 1656, No. 581, §101 et seq., 53 P.S. §45101 et seq., which was signed on February 1, 1966, one month after the repeal of the 1947 Act. Section 3501 of that Act states that: "Nothing contained in this act shall be construed to repeal . . . (6) Any of the provisions of the Act of June 25, 1947 (P. L. 1145), entitled, as amended . . . or of any of the amendments or supplements to the said act."

We are convinced that this result does not do violence to the concept of substantial similarity. Viewing the 1965 and 1947 Acts as a whole, we find that the basic provisions of the two statutes are the same. Taxing powers conferred upon municipalities remain substantially unchanged. Those provisions which are genuinely novel are peripheral in nature. In general, they relate either to internal procedures such as more stringent auditing or bonding requirements, or to new remedies which aid in the collection of delinquent taxes. These provisions, of course, take effect only from the date of their adoption, January 1, 1966. The major provisions of the Act, however, which were first enacted in 1947 and subsequently re-enacted in 1965, must be construed as having been continued in active operation since 1947.

We conclude, therefore, that the enactment proceedings begun by the City of Wilkes-Barre in 1965 were properly concluded in 1966, despite the intervening repeal and re-enactment of legislation authorizing such action.

## II
### Was the ordinance properly advertised in accordance with law?

Both the 1947 and 1965 statutes, which authorize the enactment of local income tax ordinances, provide: "[The] political subdivision shall give notice of the intention to pass such ordinance or adopt such resolution. . . . Publication of such notice shall be made by advertisement once a week for three weeks in a newspaper of general circulation. . . ."

The lower court agreed that Council observed the legal formalities set forth in the enabling statutes. It concluded, however, that, subsequently, Council attempted to mislead the public and, at one point, abandoned its intention to enact the ordinance.

As noted above, on December 7, 1965, the City Council directed the City Clerk to advertise its intention to impose a local income tax. On December 8, 15, and 22, the required notice appeared in the Wilkes-Barre Record, reciting that: ". . . it is anticipated that final action will be taken thereon by the Council of the City of Wilkes-Barre at the City Hall Building . . . on December 31, 1965, at 10:00 o'clock a.m. or as soon thereafter Council may consider the subject." On December 31, however, City Hall was closed for the New Year holiday, in accordance with a resolution of Council adopted on December 7, 1965. Council thereafter considered and passed the city tax ordinance on first reading at its next regular meeting, January 4, 1966. At that time, it also called a special meeting to be held on January 17. On January 7, 1966, however, notice of a special meeting to be held on January 10, 1966, was given to the mayor, members of Council and other city officials. This notice was also posted on the door of Council Chambers on the fourth floor of City Hall.

The lower Court concluded that Council's actions in enacting this ordinance were circuitous and misleading to the public. The court first points out that Council decided on December 7, 1965, to impose the income tax on December 31, 1965, and simultaneously approved a resolution which called for the closing of City Hall on that date. Even assuming that this was inadvertence, the Court argues further that this oversight should have been corrected in the three newspaper advertisements or at the final meeting of Council on December 28, 1965. We do not agree with this conclusion.

First, it should be noted that the enabling acts do not require that Council indicate when it will consider or enact the proposed ordinance. Second, the advertisement did not state that the ordinance would definitely be considered on December 31, 1965, but rather "on December 31, *or as soon thereafter Council may*

*consider the subject.*" The reasonable inference which a taxpayer would draw from such a statement is not, as the lower court contends, that Council would necessarily act on the ordinance on December 31, but that it would not act before that date, thus assuring that interested taxpayers would have the opportunity to express their views to members of Council. Indeed, the ordinance was considered at the first regular meeting of the newly-elected City Council in 1966. We do not find, therefore, that the public was misled by the reference to December 31 in the advertisement.

The lower court found that the public was also misled when, at the January 4 meeting, Council "approved a call for a special meeting for January 17, 1966, and then with no other public notice than posting a notice on the fourth floor of City Hall, conducted a special meeting on January 10, 1966, and adopted the wage tax on second and third reading." Again, we cannot agree with this conclusion.

The court's implication that the public was led to believe that the January 17 meeting was for the purpose of passing the wage tax ordinance is not supported by the record. Mr. Foote, the City Clerk, testified specifically that the January 17 meeting was called primarily for the purpose of adopting the amended budget and other general business. Moreover, the Court's suggestion that there was no public notice given other than the posting of an announcement in City Hall is here irrelevant. Section 1005 of The Third Class City Code, as amended, 53 P.S. §36005, provides that a special meeting may be called by giving twenty-four hours written notice to Council members. In this case, three days written notice was given to Council members and city officials, in addition to the posting of notice on the door of Council chambers. Thus, the City Council more than satisfied the statutory requirements for calling a special meeting.

The instant case is wholly unlike *Kurren Appeal,* 417 Pa. 623, 208 A. 2d 853 (1965), relied on by the lower court. In that case the New Kensington City Council was required by statute to give notice of a public hearing on a proposed zoning ordinance setting forth the time and place of such hearing. The City's failure to comply with the mandatory language of the statute rendered the ordinance there invalid. The Acts of 1947 and 1965, however, contain no legislative mandate for a public hearing. The only requirement in these Acts is that the public be notified that Council intends to adopt a tax ordinance. The only further requirement in The Third Class City Code is that all Council meetings be open to the public. Council fully complied with these directions. The public had ample opportunity to express its opposition to the proposed wage tax, if it so desired, from December 8, 1965, to January 10, 1966, at any of the Council meetings.

The lower court further found that the City abandoned its purpose to enact this tax ordinance on December 28, 1965, based on the following: On December 16, 1965, Council, on first reading, approved a budget which contained provision for "Miscellaneous Contemplated Taxes." At a meeting on December 28, 1965, however, Council struck this provision from the budget and inserted in its place a five year capital improvements loan of $430,300.00. The budget was then finally enacted on second and third reading.

On January 4, 1966, the Council again amended the budget by deleting the loan provision and inserting a provision for "earned income wage tax." The amended budget was then passed on first reading. On January 18, 1966, the amended budget was passed on second and third reading.

The court concluded that taxpayers were lulled into a belief that Council had abandoned its intent to impose such a tax when it deleted provisions for "Mis-

cellaneous Contemplated Taxes" from the budget on December 28. We find no merit in this argument.

First, there was no evidence that any taxpayers were misled by the change in the budget. Not one of the present petitioners asserted that he understood that the provision for "Miscellaneous Contemplated Taxes" actually referred to the City's proposed income tax ordinance. Indeed, the fact that the City in the advertisement estimated revenues of approximately $890,-000.00 from the wage tax, while the budget anticipated $480,000.00 from the miscellaneous taxes, would have suggested that the proposed ordinance and budget were not referring to the same taxes.

Second, it is clear from the Acts of 1947 and 1965 that budgetary provisions do not bear at all on a wage tax ordinance. Section 5 of the 1965 Act (Sections 2 and 6 of the amended 1947 Act) provides: "Any tax imposed under this act shall not be subject to any limitations under existing laws as to rate or amount or as to the necessity of securing court approval or as to budgetary requirements. Any city, borough or township imposing a tax under this act may revise its budget during any fiscal year by increasing or making additional appropriations from funds to be provided from such tax.

"The ordinance or resolution may be passed or adopted prior to the beginning of the fiscal year and prior to the preparation of the budget when desirable."

Finally, §1810 of The Third Class City Code, 53 P.S. §36810, provides that: "During the month of January next following any municipal election, the council of any city may amend the budget and the levy and the tax rate to conform with its amended budget ordinance. . . . Any amended budget ordinance must be adopted by council during the month of January. . . ." This amending procedure was, in fact, followed by the newly-elected City Council in January, 1966.

Consequently, there would be little reason for the public, in considering the proposed income tax, to take notice of, or be influenced by, contemporaneous actions by the Council with respect to the budget.

In summary, we do not agree with the lower court that the Council intentionally misled the public by closing City Hall, calling special meetings or amending the budget. There is a strong presumption that in exercising municipal powers, the municipal governing body has not abused its discretion but has acted with reason and good faith. *Donahue v. Borough of Punxsutawney*, 86 Pa. Superior Ct. 337 (1925); *Bilbar Construction Company v. Easttown Township Board of Adjustment*, 393 Pa. 62, 141 A. 2d 851 (1958). It is true that the enactment of this ordinance might have been accomplished in a more orderly fashion. We do not find that the citizens of Wilkes-Barre were misled or prejudiced, however, by the imposition of this tax.

We hold, therefore, that Ordinance No. 2 of 1966 of the City of Wilkes-Barre imposing a tax on earned income was properly enacted in accordance with law and is valid to the extent that it conforms to the 1965 Act.[8] The order of the lower Court declaring that ordinance illegal and void and setting it aside must, therefore, be reversed.

Order reversed.

———

DISSENTING OPINION BY WRIGHT, J.:

Act No. 481 of 1947, on which the City of Wilkes-Barre relied for its taxing authority, had been specifically repealed when the ordinance under consideration was adopted. The majority concedes that "the City

---

[8] The Wilkes-Barre ordinance, of course, contemplates that any of its provisions which are illegal or invalid should not impair the remaining provisions, but should be severable from the body of the ordinance.

444

not only failed to recite the proper legislative authority for its actions but, also, referred to a statute which had been repealed". In *Pleasant Hills Borough v. Carroll*, 182 Pa. Superior Ct. 102, 125 A. 2d 466, cited by the majority, the ordinance did not contain a reference to the enabling act. This was contrary to an express requirement which the legislature had inserted in the statute by amendment. The majority of this court reasoned that there had been substantial compliance with the amendment because the required statement appeared in the advertising. I filed a dissenting opinion in which Judge GUNTHER joined. In the instant case the advertising was also incorrect and is here under attack. I respectfully suggest that, although quoting Sections 81 and 82 of the Statutory Construction Act, the majority completely ignores the admonition in Section 58 that provisions imposing taxes shall be strictly construed. It is my view that the court below was fully warranted in declaring the ordinance illegal and void. I would affirm on the able opinion of Judge BROMINSKI.