**City of Reading Earned Income Tax Case**

*George B. Balmer* and *Walter M. Diener, Jr.*, for appellants.

*David J. Batdorf*, City Solicitor and *Peter F. Cianci*, Assistant City Solicitor, for respondent.

HESS, P. J., April 9, 1969.—Twenty-nine taxpayers of the City of Reading have challenged the validity of an ordinance of the city which has established an "earned income" tax applicable to both residents and nonresidents. After hearing and argument, the matter is before us for decision. Appellants contend that the tax is invalid and assign six reasons: (1) The notice of intention to adopt the ordinance anticipated revenue from the tax of $900,000, while the 1969

budget anticipates revenue of $1,210,000; (2) the notice of intention to adopt the ordinance did not state that the tax would apply to salaries, etc. of resident taxpayers; (3) the tax ordinance was not advertised "forthwith"; (4) the taxes proposed to be collected from the tax in question and from other taxes authorized by the "Local Tax Enabling Act" exceed the limitation provided by law; (5) the city should not be burdened with the cost of collecting taxes from nonresidents when no benefit will result to resident taxpayers and insufficient funds are appropriated in the budget to collect the tax; (6) employers cannot be compelled to withhold the tax from wages because of the date the ordinance was registered with the State Department of Community Affairs. We will consider the questions seriatim.

1. Variation of Anticipated Revenues Estimated in the Notice of Intention and the Budget.

The source of the authority of the city to establish the tax is The Local Tax Enabling Act of December 31, 1965, P. L. 1257, 53 PS §6901, et seq. Section 4 requires the municipality to give notice of intention to pass the ordinance by an advertisement in a newspaper of general circulation once each week for a period of three weeks. The notice must "set forth the substantial nature of the tax or license fee to be imposed by the proposed ordinance or resolution, the reason which, in the judgment of the officials of the subdivision, necessitates the imposition of the tax, and the amount of revenue estimated to be derived from the tax." The notice published by the city estimated that revenue in the sum of $900,000 would be derived from the tax for the period January 18, 1969, the effective date, to December 31, 1969, while the budget, Exhibit 8, estimates the revenue at $1,210,-000. It is contended that the notice was grossly inadequate to advise those subject to the tax of the extent

thereof and does not support in law the action of the city when enacting the tax ordinance.

Appellants would rely on a decision of the court in Luzerne County, In re Wilkes-Barre Wage Tax Appeal, 56 Luz. 279, which would appear in its reasoning and conclusion to support their contention. This case, however, was reversed on other grounds by the Superior Court, Wilkes-Barre Appeal, 208 Pa. Superior Ct. 424, so it is scarcely a sound precedent. Indeed, as we read the decision of the Superior Court as the opinion relates to the "notice of intention," pp. 438-443, it would appear to us that if the municipality sets forth the facts required by law as such facts appear at the time of publication of the notice, and there is no intention to mislead the taxpayers, the notice is sufficient. The record reveals that as of the time that the notice was published, City Council had good reason to estimate revenue at the amount set forth in the notice because it was uncertain whether the Reading School District would share in the proceeds for a portion of the year 1969. When the budget was adopted, the city knew that the school district would not participate, other facts were clarified, and the estimated revenue was increased in amount in the budget. We cannot conclude that anyone was misled. As stated by Judge Hoffman in Wilkes-Barre Appeal, supra, 441: "The only requirement in these Acts is that the public be notified that council intends to adopt a tax ordinance." This fact was certainly made clear to the public in the notice here in question, and we are not persuaded that the change in estimated revenue was in any way misleading. The public had ample information and opportunity to express its opposition to the proposed tax, and the writer himself heard much of the opposition expressed on the street and in public gatherings. In spite of opposition, the municipal authorities decided to adopt the tax as the

law authorized council to do. We are fully satisfied that the first contention is not supported by law.

2. Notice of Intention—Failure to State that Tax is Applicable to Salaries, etc. of Residents.

The Notice of Intention to Adopt the Tax Ordinance, Exhibits 2, 3 and 4, published in "The Reading Eagle" and "The Reading Times" on November 29, December 6 and December 13, 1969, omitted a line which fully sets forth that the tax would apply to salaries, etc. earned by residents. Exhibit 10, the notice submitted to the newspapers, establishes that the error was a printer's mistake. This error does not absolve the city, however, for it is strange that the mistake was not discovered by the municipal officers after the first publication and thereafter corrected. Appellants contend that the notice was misleading and failed to notify residents of the city that their salaries were subject to the tax.

The contention is somewhat unusual in the face of the testimony in the record. Only one appellant stated that she had read the notice in the classified columns of the paper. It is abundantly clear that the news media did give full coverage and discussion to the proposed tax, but such notice is not what the law requires. Can a reasonable person reading the advertisement conclude that the tax will apply to residents?

The pertinent portion of the notice as advertised, Exhibits 2, 3 and 4, provides that the city proposes to enact "an Ordinance imposing a one per cent (1%) tax for general City purposes on salaries, wages, commissions and other compensations earned after January 18, 1969 for activities or services wherever performed or rendered within said City by nonresidents of said City and upon the net profits from the operation of a business, profession or other activity wherever carried on by residents of said City and from the operation of a business, profession or other activity

carried on within said City by nonresidents of said City." The advertised notice omitted the following words which were in the notice submitted to the newspapers, Exhibit 10, and followed "after January 18, 1969 for activities or services wherever performed or rendered": "by residents of said City and for activities or services performed or rendered. . ."

It should be obvious to anyone reading the notice that something has been omitted, for the wording of the published notice "for activities or services wherever performed or rendered within said City" is, to say the least, ambiguous. "The Local Tax Enabling Act" authorizes collection of the earned income tax from salaries and other earned income of residents of the taxing municipality "wherever performed or earned" but only authorizes collection of the tax from nonresidents when earned "within" the municipality. The latter portion of the notice relating to net profits from a business, etc. correctly makes this distinction.

We are satisfied that any taxpayer who took the time to read and analyze the notice would conclude that the city proposed to tax "earned income" of residents wherever earned and on nonresidents when earned "within" the city. Apparently all of the appellants came to this conclusion because not one appeared to have been misled. Only one appellant recalled reading the notice, Anna DiBlasi. She testified that she is a resident of the city, earns income for her services, read the notice in the classified column and knew that it was the intent to impose the tax upon her earnings.

Appellants argue strenuously that the notice is legally insufficient and rely strongly on the case of The School District of the Township of Lower Saucon, Northampton County v. Bethlehem Steel Company, 54 Municipal Law Reporter 86, in which case Judge Woodring of our sister court concluded that a

notice of intention under the prior Act of June 25, 1947, P. L. 1145, 53 PS §6851, et seq., was insufficient when it failed to indicate that the tax was to apply on property within the School District of Lower Saucon which was not included within the Township of Lower Saucon but was within the City of Bethlehem. The reported case does not set forth in full the wording of the notice and we have no quarrel with the conclusion. The court concludes, p. 89: "Under the facts of the case and the law applicable thereto it is our opinion that the publication in the instant case gave no notice that the proposed tax was intended to apply to transfers of land situate wholly within the Sixteenth Ward of the City of Bethlehem." Our conclusion in this case, on the "facts of the case and the law applicable thereto," as we have already indicated, is otherwise. In reaching that conclusion, we are satisfied that we are not violating the rules of strict construction that are applicable to tax ordinances.

3. Advertising the Ordinance Forthwith.

The tax ordinance, Exhibit 1, was adopted on December 18, 1968. Notice of its adoption was published January 6, 7 and 8, 1969, and the ordinance became effective January 18, 1969. The Third Class City Code, Act of June 23, 1931, P. L. 932, §1014, as amended, 53 PS §36014, requires that ordinances prescribing penalties for the violation thereof "shall be forthwith published at least three times, each publication on a different day, . . ." Appellants contend that the delay from December 18, 1968 to January 6, 1969, for the first publication was not "forthwith."

"Forthwith" is in every sense a relative word. It is defined in Webster's Dictionary (2d Ed. 1953) as meaning "Immediately; without delay; hence, within a reasonable time; . . ." What is "reasonable time" must depend upon the facts of each case, recognizing that as used in this connection, publication of notice

must afford interested persons adequate opportunity to take steps to appeal. Ordinarily, Third Class City ordinances take effect "ten days after their passage." Third Class City Code, section 1014, supra. Section 6 of "The Local Tax Enabling Act" provides that "no tax levied for the first time by any political subdivision to which this act applies shall go into effect until thirty days from the time of the adoption of the ordinance or resolution levying the tax." Within that period, aggrieved taxpayers may appeal as the present appellants have done. What would be the meaning of "forthwith" in relation to advertising adoption of an ordinance becoming effective in 10 days would not necessarily be applicable to one effective after the longer period of 30 days. The true criterion of "forthwith" requires that there be ample opportunity for aggrieved persons to appeal. It would appear that in this case there was such ample opportunity because the appeal was filed on January 16, 1969, two days before the ordinance became effective. We are satisfied that notice of adoption of the ordinance was, under the circumstances, "forthwith," especially when we realize that most of the period between December 18, 1968 and January 6, 1969, can be considered as falling within the period of the Christmas Holiday when even municipal officials may become more imbued with the holiday spirit than advertising notice of adoption of ordinances that will not take effect for a period of 30 days after adoption.

4. Taxes Proposed to be Collected Exceed Legal Limitation.

Section 17 of "The Local Tax Enabling Act" provides that the total amount of taxes imposed under the act shall not exceed the "product obtained by multiplying the latest total market valuation of real estate in such political subdivision, as determined by the board for the assessment and revision of taxes or any

similar board established by the assessment laws which determines market values of real estate within the political subdivision, by twelve mills." Exhibit 8, the budget ordinance, sets forth on page 2 taxable real estate of $165,300,145 and estimated taxes imposed under authority of "The Local Tax Enabling Act" as a total of $2,250,000. Simple arithmetic would indicate that the estimated total of applicable tax revenue exceeds that mandated maximum.

The City Assessor testified that the assessed valuation of all real estate in the city, including property exempt from taxation, totals $211,449,050, and it is argued that if we equate assessed value to market value, the assessed value is sufficient to justify a levy of $2,250,000 from the so called "nuisance taxes." Appellants counter that the legislature could not have intended that "market value," when considered in relation to the mandated maximum, should be construed to include exempt property because the legislative intent was to preserve a balance between revenues received from real estate and from the Enabling Act. Appellants also contend that we must find in this instance that assessed value and market value are the same because there is no evidence of actual market value.

At the argument, we offered counsel for the city an opportunity to reopen the record to place in it evidence of "market value." The city has not seen fit to do so. As a member of this court who has presided as trial judge at many hearings involving appeals from city assessments, the writer can well understand the reluctance of the city at this time to take a position on "market value." To say the least, the assessment situation in the City of Reading is far from satisfactory. As individuals, we could conclude that assessed valuation of real estate in Reading is slightly in excess of 50 percent of market value as we did on the basis of the

records in the cases of In Re: Assessment of the Property of Penn Hills Associates, No. 134 February Term, 1965, and In Re: City Assessment of Property of Wyomissing Park Apartments, No. 47 March Term, 1965. As the triers of the facts on the record now before us, we must equate "assessed valuation" to "market value," and appellants' contention would appear to have merit.

As we construe section 17, supra, the argument of appellants is premature. Section 17(a) relates to the "limitation." Section 17(b) provides for the remedy of taxpayers when the limitation is exceeded. While there appear to be no authorities on this question in Pennsylvania, and counsel have cited none, we conclude that if appellants are correct in their theory, they must proceed in accord with the provisions of section 17(b). Under the section in question, the municipality is required to "forthwith reduce the rate or rates of such tax or taxes to stay within such limitations as nearly as may be." We cannot assume that the city will fail to follow this requirement if the situation appears to require the municipality to do so. Further provisions in section 17(b) provide ample protection to the taxpayers if the city fails to comply with the mandate of the law.

5. Cost of Collecting the Tax from Nonresidents.

Appellants contend that the tax ordinance as written imposes an unreasonable financial burden upon the taxpayers because it imposes the tax on nonresidents and provides for the collection of the tax from nonresidents with no resulting benefit to the city. It is true that under the provisions of "The Tax Enabling Act" the tax collected by the city on "earned income" of nonresidents employed in the city will be remitted to the municipality of their "domicile" if the municipality of "domicile" has enacted a tax on earned income. In such instances the city of Reading would appear to be rendering a service to another municipality without a financial return to the city. The simple answer to ap-

pellants' argument is that the law authorizes the city to do what it proposes to do—collect the tax from nonresidents and remit to the municipality of "domicile." Furthermore, on the record before us we must conclude that there are some residents of Reading who are employed in other municipalities which levy a tax on earned income, and that such collections will be remitted to the city. It may have been unwise to levy the tax on nonresidents but the courts cannot interfere in the exercise of a discretion allowed by law. The ballot box is the proper place to express approval or disapproval of the authorized acts of elected municipal officers.

Appellants also contend that the budget appropriates inadequate funds for the expense required to collect the tax. That may well be a fact but we know of no authority that would authorize a court to declare a tax invalid for that particular reason, especially when the facts upon which the argument rests are completely speculative. Should funds be required to collect the tax in excess of the amounts budgeted, we must at the present time assume that the municipal authorities will adhere to the law in that respect.

6. Withholding the Tax from the Earnings of Employes.

Section 9 of the Enabling Act as amended by the Act of August 11, 1967, 53 PS §6909, requires the city to file information relative to an "Earned Income" tax with the Department of Community Affairs, and that Department is required to maintain a register of all such taxes for the information of the public, especially employers. The city has filed the required information. "The effective period for each register shall be from July 1 of the year in which it is issued to June 30 of the following year": Section 9, supra. It is argued that because the city did not register its ordinance until after its effective date, January 18, 1969, the information will

not be in the register until after July 1, 1969, and that for such reason the court should invalidate the tax.

We cannot accept the argument. In the first place, "Failure to comply with this date for filing may result in the omission of the levy from the register for that year": Section 9, supra. For all we know, the department may have registered the city's tax regardless of the date of filing. Furthermore, as we read section 9, it does not relate to the validity of the tax. It applies to the obligation of an employer to withhold and remit the tax from the earnings of employes. In the event that the city takes action against an employer for failing to deduct and remit, the court may at that time be required to pass upon this question.

No one enjoys paying taxes, including the writer of this opinion. We have profound sympathy for the feelings of appellants, and, as individuals who are subject to the payment of the "Earned Income" tax enacted by the City of Reading, we would willingly and without hesitation have decreed the tax invalid if our own wishes were permitted to govern our decision. As a court, however, we are bound by the law. "There is a strong presumption that in exercising municipal powers, the municipal governing body has not abused its discretion but has acted with reason and good faith. (Citing cases.) It is true that the enactment of this ordinance might have been accomplished in a more orderly fashion. We do not find that the citizens of Wilkes-Barre (we substitute Reading in this case) were misled or prejudiced, however, by the imposition of this tax": Wilkes-Barre Appeal, supra, p. 443. We would welcome an appeal by appellants. The writer of this opinion can say that in 24 years as a judge, this is the first time that he has rendered an opinion which he would be happy to have overruled by the appellate courts.

And now, April 9, 1969, for the reasons set forth in the foregoing opinion, the appeal of taxpayers from ordinance bill no. 57, of the City of Reading, levying an "Earned Income" tax, is dismissed.