## Waltos Condemnation

*Frank A. Orban, Jr.,* for condemnee.
*John M. Cascio,* for condemnor.

SHAULIS, *J.*, August 30, 1983—This matter is before the court on preliminary objections to the declaration of taking, filed by the condemnees, Joseph and Stella Waltos, in opposition to the condemnation proceedings filed against a portion of their property by the condemnor, Hooversville Borough.

### FACTS

The Borough of Hooversville is in the process of constructing a mine drainage abatement system

within the borough. Their plan entails the laying of a pipeline through several lots in the borough. The sewage will be drained into Fallen Timber Run, a stream near Hooversville. This plan necessitates the acquisition of a right-of-way across a portion of the premises owned by Joseph and Stella Waltos, condemnees. The Borough made an offer to the Waltos for the right-of-way, which was refused. Eminent Domain proceedings, instituted through a Declaration of Taking, were filed on May 11, 1983.

The condemnees filed these preliminary objections, alleging that the condemnation is illegal because the proposed pipeline would pollute Fallen Timber Run. In addition, a second pipeline, draining into the already polluted Stonycreek River, runs in the vicinity of the proposed new pipeline. Condemnees allege that enlarging the existing pipeline would be the proper answer to Hooversville's drainage need.

## DISCUSSION

Both parties agree that a municipality has the right to obtain property through eminent domain proceedings when the taking is done for a public purpose. However, the first preliminary objection avers that no public purpose "will be, or can be, served by the proposed condemnation," due to the existence of a pipeline into a polluted stream. Condemnees are apparently contending that the Borough abused their municipal authority by their decision to build the proposed pipeline. This is unsupported by either the facts or the law.

When a duly empowered authority acquires land by condemnation, an objecting party faces a heavy burden of proving that the authority abused their discretion with their decision to acquire that par-

ticular property. In In Re Will Condemnation, 37 Somerset L. J. 404 (1979), this court held that a condemnee must prove that the authority made a decision which was "fraudulent, arbitrary or done in bad faith." In Will, supra. the Pennsylvania Turnpike Commission chose to build a new access road for $90,000, as opposed to repairing an existing underpass for $435,000. The new access road would involve the taking of some land from the condemnees (among others) and also inconvenience the condemnees due to the greater distance involved in leaving their property.

The condemnees filed preliminary objections to the Turnpike Commission's Declaration of Taking. They argued that the taking was, among other reasons, unnecessary for the running of the turnpike, unnecessary due to the already existing access road and an abuse of discretion because the access could best be provided by "modification, repair, improvement or extension" of the underpass. The court's inquiry was limited. "[T]he Pennsylvania Turnpike Commission has the say-so in determining what taking is, as the statute says, 'necessary or convenient' for the construction and efficient operation of its road, and a court may not interfere with its exercise of that discretionary power unless it appears from the evidence that such discretion was abused by action which was fraudulent, arbitrary or done in bad faith." Id at 406. The record revealed no evidence of an abuse of discretion and the court upheld the condemnation.

In Re: Jenner Area Sewer Authority Condemnation, 40 Somerset L. J. 76 (1980), three property owners opposed their sewer commission's decision to place a new sewer across a rear part of their lots. They claimed that this sewer would limit the use of their property. In one case, the loss of valuable trees

was feared. The condemnees proposed that the Authority erred in not placing the sewer under an alley, in an area where there would be no harm to their property.

Following Will, supra., the court viewed the Authority's decision and found that the record showed that it was not fraudulent, arbitrary or done in bad faith.

After that, the court viewed their own role in this type of situation.

"Even if we were persuaded that the authority's decision was not the best decision or was the poorest of the possible reasonable decisions, the law would not permit us to require the authority to adopt the route we consider better or best. So long as the authority has made a decision which has some legitimate reason to support it, and is not utterly without rational foundation, we cannot set it aside even though we might disagree with it. Miller et al v. Borough of Meyersdale (No. 1), 36 Somerset L. J. 212, 216-17 (1978). Moreover, the burden of proving arbitrariness is upon the property owners-condemnees, and the burden is a heavy one to overcome the strong presumption of the regularity of official acts. See Washington Park Appeal, 425 Pa. 349, 353 (1967); Wilkes-Barre Appeal, 208 Pa. Super. 424, 443 (1966); Baltzer et al v. Shanksville-Stonycreek, 27 Somerset L. J. 161, 167-8 (1972).

"This is not only the law, it is good law: democratic government would not for long be democratic, or even workable, if courts were to be substituting the decisions of judges for the decisions of public bodies which are not clearly illegal.

"In this case, the authority has shown there are practical objections to placing the sewer line in the alley or street, and that those objections are supported by some good reasons. That being so, the

authority's right-of-way decision is not illegal, even though others including the Court might disagree with the route selected and for other good reasons choose a different route." Id, at 81, 82.

Under the facts presented, the borough's decision to build the new sewer system must be upheld. The record reveals no indication of fraud or bad faith. The decision is not clearly illegal. It does not appear to be arbitrary. Jenner describes an arbitrary decision as being "unreasonable or irrational." The Borough is on record as saying that the proposed new sewer line is necessary and that the existing line is not adequate for their purpose. Although this may not be the best decision, it is hardly irrational. The Borough's decision to build the sewer line is within their power as a municipal government. The condemnees failed to meet their burden of proving that it was contra to the public purpose.

The second preliminary objection avers that Hooversville has no authority to condemn the land, since this is actually a Department of Environmental Resources (D.E.R.) project. The drawings and maps were supplied by the D.E.R. The record indicates that the D.E.R. did some investigating of this project, and that they are actually funding the project. This, condemnees apparently infer, places the condemnation of the land solely in the hands of the D.E.R. However, the record also indicates that the D.E.R., upon completion of the project, will turn over the sewer to the Borough to maintain. This objection ignores any possible relationship between the D.E.R. and the Borough.

53 P.S. §46501 et seq. grants the municipality the power to obtain land by eminent domain for building, among other things, sewer treatment works. It is obviously the Borough of Hooversville who will benefit from the project. The ultimate owner of the

sewer project and the right-of-way will be the Borough of Hooversville.

Sustaining this objection would ignore the possibility that the Borough might be the ultimate owner of this sewer line. It would, perhaps prematurely, suspend this action. In light of this, the second preliminary objection is dismissed.

Allegations of pollution must be viewed in light of the Pennsylvania State Constitution, specifically Article I, Section 27, which reads:

"The people have a right to clean air, pure water and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all of the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people."

The judiciary has, of course, been called upon to establish tests or guidelines to maintain the ideals of the Constitution. In Payne v. Kassab, 11 Pa.Commw. 14, 312 A.2d 86, (1973) the Commonwealth Court set guidelines which are apropos to an appropriation for the widening of a street through a park, in light of Article 1, Section 27. "Judicial review of the endless decisions that will result from such a balancing of environmental and social concerns must be realistic and not merely legalistic. The court's role must be to test the decision under review by a three-fold standard: (1) Was there compliance with all applicable statutes and regulations relevant to the protection of the Commonwealth's public natural resources? (2) Does the record demonstrate a reasonable effort to reduce the environemtal incursion to a minimum? (3) Does the environmental harm which will result from the challenged decision or action so clearly outweigh

the benefits to be derived therefrom that to proceed further would be an abuse of discretion." Id at 29-30.

At this time, this court is not factually able to adjudicate the objections in light of this standard. There is nothing in the record to accurately describe the proposed damage to the Fallen Timber Run if the new pipeline is installed. There was conflicting evidence of a rudimentary level describing the current fish and wildlife use of the run, and even less exacting evidence to estimate the affect of the new pipeline on the stream. The Payne test, especially number 3, involves a balancing of interests based upon the proposed amount of damage to the stream weighed against the costs, alternatives and benefits of the action. It is impossible to make this judgment without more information.

The test for a proposed sewer line can be even more complex. Community College of Delaware County v. Fox, 20 Pa. Commw. 335, 342 A.2d 468 (1975) proposed four factors in addition to those in Payne which the Environmental Hearing Board (EHB) considers in sewer permit cases. They include; the direct impact upon each of the environmental values listed in the first sentence of Section 27; the long-range indirect impact on these values, due to possible increased development or other secondary results of action; alternate methods of using the resources in question; and alternate methods of attaining the objectives sought by a permit applicant." Id at 348, 476.

It is clear that this court is unable to ascertain the damage to the Fallen Timber Run or the viability of enlarging the existing pipeline into Stonycreek River, without additional information. At this point all that we have is a controversy.

Both parties agree that the proposed pipeline will introduce pollution into Fallen Timber Run. The amount of pollution and its impact upon the creek are, as of now, unknown. This court must ascertain the proposed damage to the creek and weigh it against the proposed benefit to the community. The feasibility of enlarging the existing pipeline must also be considered. Until the parties assess the proposed damage with some official environmental impact study, this court cannot adjudicate the legality of the proposed pipeline.

For the above reasons, the third preliminary objection is dismissed.

The fourth preliminary objection, much like the first objection, infers that this court should overrule the Borough's decision to build a new sewer and expand the existing sewer into Stonycreek River. This objection is dismissed for the reasons discussed under the adjudication of the first preliminary objection.

The fifth objection addresses the condemnor's request for a fee simple estate over the Waltos land. During the oral argument, the condemnor conceded on the record that it would accept a lesser estate over the Waltos land. The objection averred that granting a fee simple estate over the property would cause the property to become land locked. An estate less than fee simple will not cause this to occur. Therefore, this objection is dismissed with the understanding that the Declaration of Taking will be amended to allow for an easement rather than fee simple taking.

The final preliminary objection avers that the Declaration of Taking is vague and indefinite as to the land proposed to be condemned and that the allegations in the Declaration of Taking are inconsistent with other plans submitted. A review of the

plans submitted, taken as a whole, reveals a more than adequate description of the land at issue. The condemnees were easily able to ascertain the land to be condemned. This objection is dismissed.

## ORDER

Now, this August 30, 1983, condemnee's preliminary objections are dismissed.