144 Pa. Commonwealth Ct. 429 (1992)
601 A.2d 902
M.P., an Undisclosed Elected Official, Petitioner,
v.
COMMONWEALTH of Pennsylvania, STATE ETHICS COMMISSION, Respondent.
Commonwealth Court of Pennsylvania.
Argued October 11, 1991.
Decided January 3, 1992.
James M. Herb, for petitioner.
Vincent J. Dopko, Gen. Counsel, for respondent.
Before CRAIG, President Judge, BYER, J., and NARICK, Senior Judge.
*430 CRAIG, President Judge.

Proceedings In This Court
Before this court is a motion of M.P., an undisclosed elected official of Pennsylvania, for summary judgment pursuant to M.P.'s petition for declaratory judgment against the State Ethics Commission (SEC). The history of the proceedings follows.
The SEC commenced an investigation against M.P. on May 1, 1986. On December 28, 1987, three days before the date of the Sunset Act's[1] termination of the SEC's existence, the SEC issued to M.P. a preliminary order outlining its case against M.P.
Meanwhile, the Leadership Committee of the House and Senate of the General Assembly, pursuant to § 4(4) of that Act, 71 P.S. § 1795.4(4), granted two six-month extensions to the SEC, extending its termination date to December 31, 1988.
The SEC scheduled a due process hearing on the preliminary order for January 25, 1989. The SEC, at M.P.'s request, rescheduled the hearing for February 23, 1989. Before the February 23, 1989 hearing, M.P. filed with this court a petition for declaratory judgment and special injunction and motion to impound court record.
On February 28, 1989, the SEC filed preliminary objections to the petition for declaratory judgment and special injunction and also filed an answer in opposition to the motion to impound. M.P. withdrew his petition for special injunction and this court issued an order on March 1, 1989, dismissing the SEC's preliminary objections to M.P.'s petition for special injunction.
On March 15, 1989, this court denied M.P.'s motion to impound. On May 16, 1989, this court overruled the SEC's preliminary objections to the petition for declaratory judgment and on May 31, 1989, the SEC filed an answer to M.P.'s motion for declaratory judgment.
*431 On June 26, 1989, the SEC filed a motion for summary judgment. M.P. filed a brief in response to the motion for summary judgment and this court held oral arguments on the matter on October 4, 1989. On December 13, 1989, the Pennsylvania Supreme Court issued its decision in Blackwell v. State Ethics Commission, 523 Pa. 347, 567 A.2d 630 (1989) (Blackwell II).
In Blackwell II, the Supreme Court concluded that the Leadership Committee unconstitutionally extended the SEC's termination date because the postponement was a legislative act requiring a bicameral vote and presentment to the governor.
Therefore, the SEC was in its six-month wind-up period beginning December 31, 1987 and was a legal nonentity from June 30, 1988 to June 26, 1989.
On January 22, 1990, this court denied the SEC's motion for summary judgment without prejudice in order to give the parties an opportunity to submit briefs conveying their views as to the impact of the Blackwell II decision.
On March 30, 1990, the Supreme Court, in Blackwell v. State Ethics Commission, 524 Pa. 403, 573 A.2d 536 (1990) (Blackwell IV), assumed plenary jurisdiction over the present case and related cases involving the Sunset issue. In Blackwell v. The State Ethics Commission, 527 Pa. 172, 589 A.2d 1094 (1991), (Blackwell V), the Supreme Court concluded that its holding in Blackwell II applied to the present case and remanded the case to this court for proceedings consistent with the Blackwell II decision.
On August 21, 1991, M.P. filed a motion for summary judgment and this court heard oral argument on the matter on October 11, 1991.

Motion for Summary Judgment on the Petition for Declaratory Judgment
Summary relief can be granted only where no material fact is in dispute and where the right to relief of the applicant is clear. Gartner v. Pennsylvania Board of *432 Probation and Parole, 79 Pa.Commonwealth Ct. 141, 469 A.2d 697 (1983).
M.P. argues that this court should grant his motion for summary judgment because of two cases, State Ethics Commission v. Anderson, 130 Pa.Commonwealth Ct. 608, 568 A.2d 1368 (1990), and Blackwell v. State Ethics Commission, 130 Pa.Commonwealth Ct. 646, 569 A.2d 378 (1990) (Blackwell III), both cases aff'd, Blackwell V.
In Anderson, the SEC filed in this court on October 7, 1988, a petition to compel Anderson to file financial disclosure statements. Anderson filed a motion for judgment on the pleadings stating that the commission was without the authority to pursue the action because the SEC was a legal nonentity from June 30, 1988 to June 26, 1989. This court, citing Blackwell II, granted Anderson's motion for judgment on the pleadings and dismissed the SEC's petition seeking injunctive relief to compel the respondents to file financial interest statements.
In Blackwell III, the SEC issued on October 7, 1988, a subpoena to three Philadelphia City Council members. The three City Council members filed a motion for judgment on the pleadings with this court, and on January 8, 1990, this court granted the motion, stating in the order:
1. The petitioner's motion for judgment on the pleadings is granted to the extent that the court hereby declares to be unlawful and void the State Ethics Commission's investigation of the petitioners and proceedings against them conducted after June 30, 1988, including the subpoena issuance of October 7, 1988.
M.P. argues that his case is similar to Anderson and Blackwell III because the SEC unlawfully continued its investigation during the SEC's Sunset period. Therefore, M.P. argues, summary relief is proper.
However, the SEC argues that Blackwell III and Anderson are distinguishable from the present case because in this case the SEC took no substantive action during the Sunset period. The SEC argues that it completed its *433 investigation of M.P. before Sunset so that during the Sunset period nothing substantial occurred. The SEC states that the due process hearing scheduled for February 28, 1989, was merely a formality and not a significant act.
The debate of the parties on this score brings out a key aspect of this case which could possibly distinguish it from the Blackwell cases and the Anderson case. This case presents, for the first time, the particular question of whether the SEC, as now reestablished, may resume and continue proceedings begun by it against named individuals during the earlier period of its lawful existence, before it became a legal nonentity by virtue of the Sunset Act and the ineffectuality of the attempted continuation by the Leadership Committee of the General Assembly; M.P. here seeks a judgment mandating that M.P. shall not be subject to any further proceedings by the SEC.
The actual holdings in the preceding cases did not specifically deal with that question. Each of those preceding cases involved the validity or invalidity of particular actions taken by the SEC during its period of existence as a legal nonentity.
In Blackwell III the order of this court was to declare unlawful and void the SEC's "investigation of the petitioners and proceedings against them conducted after June 30, 1988, including the subpoena issuance of October 7, 1988...." In Blackwell II, the Supreme Court declared that
[T]he Commission ceased to legally exist as of June 30, 1988 following the automatic wind up period provided by section (f) of the Sunset Act. Although the Commission has now been constitutionally reestablished (presumptively) as of June 26, 1989, in the interim the Commission was a legal nonentity and any actions taken by the Commission during that period are also null and void. (Emphasis added.)
Blackwell II, 523 Pa. at 362, 567 A.2d at 638.
Thus, in literal terms, the mandate of the Supreme Court and this court in the Blackwell cases did not, in so many *434 words, forbid any resumption of action by the SEC with respect to the same cases after it had been reestablished.
In Anderson, our specific holding was to refuse to award injunctive relief to the SEC to compel the persons being investigated to file financial disclosure statements. Our holding was to refuse such relief on the ground that, in October of 1988, when the commission sought that injunctive relief from us, it had no legal existence and therefore no standing before us, just as the Supreme Court in Blackwell II held that the commission, during the period that it was a legal nonentity, could not be treated as being in existence for the "filing of the appeal in this court." Blackwell II, 523 Pa. at 362, 567 A.2d at 638.
Therefore, in this case, where we are not required to reach a holding as to the validity or invalidity of any action taken by the commission during its period of nonexistence, we must confront squarely the question of whether the investigations begun and actions taken by the commission during its earlier period of lawful existence survived in limbo, so that the SEC can now proceed further in the same matter against the same party upon the authority of its legislative revival accomplished by statutory enactment as of June 26, 1989.
Can this court logically conclude that any proceedings or investigations, commenced or even concluded as investigations, before the Sunset date, can be resurrected after the agency, the SEC in this case, was terminated under the Sunset Act? Section 6 of that Act, in subsection (c), 71 P.S. § 1795.6(c), listed the SEC among the agencies named after the following statement:
(c) The following agencies together with their corresponding statutory functions and duties shall terminate all activities and shall go out of existence on December 31, 1987.... (Emphasis added.)
Section 6(f), 71 P.S. § 1795.6(f), added:
(f) Agencies terminated shall be given until June 30 of the year following the one in which they are terminated to wind up their affairs. During that period, the *435 Governor may petition the General Assembly for a review of the termination but the agency shall be terminated unless the General Assembly passes a law to the contrary. (Emphasis added.)
In the light of that unequivocal language as to termination, with the ineffectuality of commission continuation being settled law, we cannot conclude that any function or proceeding can be revived after such definitive declarations of the agency's termination and nonexistence.
The SEC draws our attention to § 9 of Act 9[2], 65 P.S. § 409 note, the new law which reconstituted the SEC as of June 26, 1989, providing as follows:
This amendatory act shall not apply to violations committed prior to the effective date of this act, and causes of action initiated for such violations shall be governed by the prior law, which is continued in effect for that purpose as if this act were not in force. For the purposes of this section, a violation was committed prior to this act if any elements of the violation occurred prior thereto.
That language makes clear that Act 9 has no application to the alleged violations in this case, which allegedly were committed before 1989. However, SEC counsel relies upon the above language which states that "causes of action initiated for such [prior] violations shall be governed by the prior law, which is continued in effect for that purpose...." SEC counsel argues that even if no investigation against M.P. has survived, the SEC could now initiate an investigation anew under the former State Ethics Act, Act 170 of 1978[3]. However, both the SEC's argument and also the above quoted terms of § 9 of Act 9 fail to reckon with the conclusive effect of the Sunset Act upon the former State Ethics Act, Act 170.
Can Act 9 effectively declare that the earlier law, and therefore the earlier existence of the SEC, "is continued in effect" despite the Sunset Act's unequivocal declaration *436 that the existence of the SEC itself ended and did not continue beyond the 1987 termination date and the mid-1988 wind-up date?
In one sense, SEC counsel appears to contend that § 9 of Act 9 now has bridged over the period of nonexistence of the agency. The conclusion must be otherwise. Because the agency did not exist during the period from its termination date to June 26, 1989, its power, thus disembodied, did not exist. That legal nonexistence was not, as the SEC would characterize it, merely a procedural irregularity.
The SEC also argues that Act 9, acknowledged to be a reenactment, has the effect of relating the present existence of the SEC back to its inception; the SEC quotes 1 Pa.C.S. § 1961, the Statutory Construction Act, which states:
Whenever a statute reenacts a former statute, the provisions common to both statutes shall date from their first adoption. Such provisions only of the former statute as are omitted from the reenactment shall be deemed abrogated, and only the new or changed provisions shall be deemed to be the law from the effective date of the reenactment.
The SEC relies upon Earned Income Tax Ordinance of Wilkes-Barre, 208 Pa.Superior Ct. 424, 222 A.2d 499 (1966), holding that the reenactment of a tax enabling act operated to validate a local tax ordinance which the municipality had enacted after the original enabling act had been repealed. The Superior Court held that the major provisions of the original act, first enacted in 1947, should be construed as having continued in active operation until the time of reenactment in 1965.
However, such statutory resurrection by reenactment is limited to situations not affected by a conclusive declaration such as that found in the Sunset Act here, where its subsection 6(c) stated that the agency "shall terminate all activities," and subsection 6(f) reiterated that "the agency shall be terminated" (unless a reviving law intervenes, *437 which did not happen) and that terminated agencies "shall wind up their affairs."
These words permit no interpretation other than that they pronounce the death knell of the proceedings at Sunset time. They do not say that matters are suspended until revived; they declare termination.
Therefore MP is entitled to a grant of the motion for summary judgment and an award of the relief comprehended within that motion.
The relief requested, in Counts Two and Three of M.P.'s petition for review, must be granted to the following extent:
1. The investigation of M.P. is, or is deemed to be, dismissed.
2. The SEC shall not disclose or otherwise make public its preliminary order or its findings in the previous proceeding relative to the alleged violations of the State Ethics Act by M.P.

ORDER
NOW, January 3, 1992, M.P.'s motion for summary judgment incident to its petition for review in the nature of a declaratory judgment (No. 46 M.D.1989), is granted and the investigation of M.P. is dismissed. Furthermore, the SEC is prohibited from disclosing or otherwise making public its preliminary order or its findings in the previous proceeding relative to the alleged violations of M.P.
BYER, Judge, dissenting.
I agree with the majority that nothing in the Blackwell decisions in this court or the Supreme Court or in State Ethics Commission v. Anderson, 130 Pa.Commonwealth Ct. 608, 568 A.2d 1368 (1990), forbids "resumption of action by the [State Ethics Commission] with respect to" proceedings or investigations that were pending prior to the ethics commission's period of nonexistence (June 30, 1988  June 26, 1989). Op. at 434. However, I disagree with the majority's interpretation of the Sunset Act and its conclusion *438 that proceedings or investigations commenced prior to the ethics commission's temporary period of nonexistence cannot be "resurrected," id. at 434, after the ethics commission was reestablished on June 26, 1989. In my view, we need not consider whether proceedings/investigations begun prior to the ethics commission's temporary period of deemed nonexistence can be resurrected, because such proceedings/investigations never died in the first place.
The majority erroneously sounds the "death knell" for all proceedings/investigations commenced before "Sunset time," based solely upon its misinterpretation of section 6 of the Sunset Act.[1]Id. at 436-437. The portions of section 6 relied upon by the majority are as follows:
(c) The following agencies together with their corresponding statutory functions and duties shall terminate all activities and shall go out of existence on December 31, 1987....
* * * * * *
(f) Agencies terminated shall be given until June 30 of the year following the one in which they are terminated to wind up their affairs. During that period, the Governor may petition the General Assembly for a review of the termination but the agency shall be terminated unless the General Assembly passes a law to the contrary.
71 P.S. § 1795.6(c) and (f) (emphasis added in majority opinion, at 434).
The majority focuses on this "unequivocal language as to termination" to hold: "we cannot conclude that any function or proceeding can be revived after such definitive declarations of the agency's termination and nonexistence." Op. at 435 (emphasis mine). I respectfully suggest that the majority improperly equates "oranges" (the functions or proceedings of the agency) with "apples" (the agency itself). Section 6 unequivocally declares the termination of the existence of an agency if not reestablished by *439 the legislature through the mechanisms provided in the Sunset Act, but is completely silent as to the effect of such termination/nonexistence on pending proceedings and investigations before the agency commencing before the scheduled termination of an agency which is ultimately reestablished by the General Assembly after a court-ordered, temporary period of deemed nonexistence.
Section 6 is silent on this issue because it arises under circumstances that never were contemplated by the General Assembly. As enacted by the legislature, the Sunset Act scheduled numerous state agencies for automatic termination on December 31, 1983, December 31, 1985, and December 31, 1987,[2]unless the legislature previously had reestablished an agency scheduled to be terminated or continued its life for one year by joint resolution, section 7(a) and (b), 71 P.S. § 1795.7(a) and (b), or unless the leadership committee[3] authorized a "postponement of the... termination of an agency for a period not exceeding one year." Section 4(4), 71 P.S. § 1795.4(4).
In Blackwell II,[4] the Supreme Court struck down the leadership committee extension procedure of section 4(4) as an unconstitutional delegation of the legislative authority in violation of Article II, section 1 of the Pennsylvania Constitution.[5] Therefore, the ethics commission was deemed not *440 to have been in existence between June 30, 1988 (six months after the ethics commission's scheduled termination date of December 31, 1987) and June 26, 1989, when the full legislature reestablished the ethics commission. The termination of the ethics commission was not achieved by operation of section 6 alone, but by operation of section 6 in conjunction with Blackwell II's invalidating the leadership committee's extension of the life of the ethics commission for two six-month periods pursuant to section 4(4).
When the General Assembly enacted the Sunset Act, it certainly did not contemplate the back-dated temporary termination of a Commonwealth agency caused by judicial invalidation of one of that act's extension mechanisms. The legislature only contemplated continued life or permanent termination.
The issue in this case (whether a proceeding/investigation pending as of June 30, 1988 remains viable following the one-year period of deemed nonexistence mandated by the Supreme Court's ruling in Blackwell II) arises only because of the unforeseen period of temporary termination of the ethics commission which in fact was reestablished by the full legislature on June 26, 1989, and which in fact continued to operate during that period. Nothing in section 6 (or elsewhere in the Sunset Act) suggests that the legislature intended pending ethics commission proceedings/investigations to be extinguished because of a temporary period of deemed nonexistence which it could not have contemplated, and I cannot comprehend how the majority interprets the language of section 6 to "unequivocally" mandate extinguishment of such pending proceedings/investigations. The General Assembly did not foresee these circumstances created by Blackwell II and the Sunset Act simply does not speak to this issue.
Of course, as Blackwell II holds, any ethics commission actions or determinations made during the period of temporary nonexistence are "null and void and without legal effect." 523 Pa. at 362, 567 A.2d at 639. Thus a subpoena issued and an appeal filed by the ethics commission during *441 that period were ruled "null and void", id., as was an application for an injunction to compel financial disclosure filed by the ethics commission. Anderson. However, the ethics commission took no affirmative actions nor did it make any adjudications or determinations regarding M.P. between December 28, 1987 and June 26, 1989. According to ethics commission's uncontradicted account, its investigation of M.P. was completed and its preliminary charges against M.P. were issued on December 28, 1987, three days before the ethics commission was scheduled to be terminated by section 6(c), 71 P.S. § 1795.6(c). It was not terminated as scheduled because of the postponements authorized by the leadership committee.
A hearing on the preliminary charges had been scheduled during the period of deemed nonexistence. Had the hearing been held during that period, it would have been null and void, and any adjudication rendered as a result of that hearing would have been of no legal effect. However, the ethics committee did not commence the hearing, nor did it take any other action of consequence between December 28, 1987 and June 26, 1989. During that period, M.P. was the moving party on various petitions filed in this court to which the ethics commission responded. Not until June 26, 1989, the date of official reestablishment of the ethics commission, did it take any affirmative action against M.P. by filing a motion for summary judgment which was dismissed by this court without prejudice.
Unlike Blackwell II and Anderson, where affirmative actions taken by the ethics commission during the period of nonexistence were declared to be null and void and of no legal effect, here there was no ethics commission action taken that we could declare null and void. There were some informal communications between the ethics commission and M.P.'s counsel during the nonexistence period which I suppose we could declare null and void, but that would be meaningless because those communications decided nothing and affected no one. The majority elevates form over substance to extinguish the pending proceedings/investigations *442 against M.P. when in fact the ethics commission took no action against M.P. during the period in which it was deemed (after-the-fact) terminated.
Because the Sunset Act is silent with respect to whether pending ethics commission proceedings/investigations survive following a court-ordered, temporary, deemed termination period, it is necessary and appropriate to attempt to ascertain the legislature's probable intent in these circumstances by considering, among other things, the occasion and necessity for the legislation, the object to be attained and the mischief to be remedied, the consequences of a particular interpretation and the former law on the subject. 1 Pa.C.S. § 1921(c); Corestsky v. Board of Commissioners, 520 Pa. 513, 517-18, 555 A.2d 72, 74 (1980). I agree with the ethics commission that Act 1989-9, which reenacted and amended the old Ethics Act[6] and reestablished the ethics commission, indicates that the legislature would not have intended to extinguish proceedings/investigations that were pending at Sunset time. Section 9 of Act 1989-9 provides:
This amendatory act shall not apply to violations committed prior to the effective date of this act, and causes of action initiated for such violations shall be governed by the prior law, which is continued in effect for that purpose as if this act were not in force. For the purposes of this section, a violation was committed prior to this act if any elements of the violation occurred prior thereto.
65 P.S. § 409 note (emphasis added).
By this provision, the General Assembly manifestly intended that the ethics commission retain jurisdiction to prosecute public officials for alleged violations of the old Ethics Act committed prior to June 26, 1989, which would be determined according to the standards of the old Ethics Act, Act 1978-170 (presumably to avoid ex post facto problems if the new Ethics Act, Act 1989-9, purported to apply its substantive provisions to such violations). Under this statutory authority, nothing prevents the ethics commission *443 from now commencing an investigation/proceeding against M.P. for alleged violations of the old Ethics Act, as neither Act 1978-170 nor Act 1989-9 contain any statute of limitations.[7] Because the ethics commission may initiate new proceedings against M.P. for alleged violations of Act 1978-170 occurring before June 26, 1989, there is no justification for this court to prohibit continuation of an ethics commission proceeding already begun against M.P. alleging violations before June 30, 1988.
By its erroneous construction of section 6 of the Sunset Act, the majority frustrates the legislative intent in enacting the Sunset Act and in reestablishing the ethics commission in Act 1989-9. This construction  that under section 6 of the Sunset Act, a court-ordered temporary period of deemed termination requires dismissal of all proceedings/investigations pending before that time  not only is inconsistent with the legislative intent, but also furthers no valid public policy or principle of law where, as here, the ethics commission took no action of consequence regarding M.P. while it was deemed not to exist. M.P. has suffered neither harm nor prejudice as a result of the temporary deemed nonexistence of that agency. No harm, no foul and no rational legal explanation has been advanced by the majority for its "ultimate exclusionary rule" which obliterates all *444 traces of investigations and proceedings begun while the ethics commission's authority and power was in full bloom and unquestioned.
Particularly where we are dealing with the acts of another branch of government, I believe that a judicial remedy of invalidation must be rationally related to the alleged wrongdoing and must be necessary to remedy actual harm caused by the wrongdoing. I cannot think of any sound judicial or other policy served by the majority's imposition of the "death penalty" upon proceedings and investigations pending in the ethics commission on or before June 30, 1988. Of course, the majority's proclamation of the "death penalty" in this case sounds the "death knell" for similarly situated proceedings and investigations in other agencies also deemed to be temporarily nonexistent by virtue of Blackwell II. The consequences of the majority's misinterpretation of section 6 of the Sunset Act and imposition of a wholly unjustified judicial remedy of invalidation are potentially chaotic and disastrous for all agencies that had continued to operate during a period of deemed nonexistence.
For these reasons, I respectfully dissent.
NOTES
[1] Act of December 22, 1981, P.L. 508, as amended, 71 P.S. §§ 1795.1-1795.14.
[2] Act of June 26, 1989 P.L. 26, No. 9.
[3] Act of 1978, P.L. 883, No. 170, as amended, 65 P.S. §§ 401-413.
[1] Act 1981-142, as amended, 71 P.S. § 1795.6.
[2] See section 6(a), (b) and (c), 71 P.S. § 1795.6(a), (b) and (c), respectively.
[3] The leadership committee consisted of six high-ranking members of the Senate and the House of Representatives. Section 3, 71 P.S. § 1795.3.
[4] Blackwell v. State Ethics Commission, 523 Pa. 347, 567 A.2d 630 (1989).
[5] The majority opinion in this case erroneously states that Blackwell II struck down this leadership committee extension mechanism "because the postponement [of termination] was a legislative act requiring a bicameral vote and presentment to the governor." Slip op. at 3. In fact, the Supreme Court explicitly declined to reach the arguments that the Pennsylvania constitution requires legislative enactments by a bicameral legislature and presentment to the governor, given that court's holding that the mechanism was an unconstitutional delegation of the legislative power under Article II, section 1 of the Pennsylvania Constitution. 523 Pa. at 362 n. 1, 567 A.2d at 638 n. 1.
[6] Act 1978-170, as amended, 65 P.S. §§ 401-413.
[7] The Judicial Code provides the following arguably relevant statute of limitations:

§ 5552. Other offenses
(a) General rule.  Except as otherwise provided in this subchapter, a prosecution for an offense other than murder or voluntary manslaughter must be commenced within two years after it is committed.
* * * * * *
(c) Exceptions.  If the period prescribed in subsection (a) or subsection (b) has expired, a prosecution may nevertheless be commenced for:
* * * * * *
(2) Any offense committed by a public officer or employee in the course of or in connection with his office or employment at any time when the defendant is in public office or employment or within five years thereafter, but in no case shall this paragraph extend the period of limitation otherwise applicable by more than eight years.