# Rickert v. Latimore Township
# Zoning Hearing Board

C.P. of Adams County, no. 02-S-946.

*Charles M. Suhr* and *Guy P. Beneventano,* for appellants.
*Ron Turo,* for appellee.

GEORGE, *J.,* August 1, 2003—This matter comes before the court on a procedural challenge to the legislative action taken by the Latimore Township Board of Supervisors on March 4, 2002. A number of property owners argue that the legislative action adopting the township's zoning ordinance was procedurally defective and, therefore, invalid. Although the factual background in this matter is not in dispute, there is substantial argument concerning the meaning and significance of certain actions taken by the supervisors. Accordingly, resolution of the legal issues requires a detailed examination of the factual background.

On March 5, 1987, the supervisors enacted the Latimore Township Zoning Ordinance. The 1987 ordinance provided a comprehensive zoning scheme throughout Latimore Township and included zoning districts spe-

cifically identified on a zoning map. Included among the districts was a commercial-industrial zoning district (C-1) which affected the property bordering old U.S. Route 15 (Harrisburg Road). The appellants, Terry R. Rickert, Robert L. Junkins, M. Everett Weiser and Olive L. Weiser, own property along old U.S. Route 15 which was included within the C-1 district.

On May 6, 1988, the supervisors amended the ordinance. The amendments, however, were relatively minor and are immaterial to the current litigation. Other than this legislative action in 1988, the ordinance remained in its original form until the supervisors' recent actions, which are the subject of this dispute.

Although there is an indication that changes to the ordinance were discussed as early as 2000, see March 4, 2002 correspondence from the Adams County Office of Planning and Development to the supervisors, exhibit number one, zoning hearing board transcript (Tr.), the first evidence in the record of public consideration of the proposed changes to the ordinance is found in the February 12, 2001 minutes of the supervisors' meeting. Tr. exhibit 1. At that time, the supervisors indicated that the ordinance would be considered at their March 2001 meeting. The March 2001 minutes reflect the approval of a supervisors' motion to consider changes to the ordinance at a meeting to be scheduled for April 2, 2001. Inexplicably, the record fails to include any evidence of the April 2, 2001 meeting ever taking place. Moreover, minutes from the April 9, 2001 regular meeting lack any indication of the supervisors' consideration of the proposed ordinance. However, the May 14, 2001 minutes reflect that the supervisors considered the ordinance and

that Supervisor Worley moved to approve the zoning map. That motion apparently died for lack of a second and the supervisors sent the ordinance back to the planning commission. At the June 11, 2001 regular meeting, Supervisor Worley renewed his motion to adopt the zoning map; however, this motion once again died for lack of a second. The supervisors, thereafter, approved a motion for a public hearing to consider the zoning ordinance on June 27, 2001. Once again, inexplicably, there is no indication in the record as to what occurred on June 27, 2001, nor whether the planned public hearing ever took place.

The Latimore Township Planning Commission minutes during this relevant period reflect that on August 28, 2001, the Latimore Township Planning Commission discussed potential changes to the ordinance. Additionally, the minutes of the September 25, 2001 planning commission meeting indicate the planning commission considered the ordinance and recommended changes within it to the supervisors.

The December 10, 2001[1] supervisors' meeting minutes reflect their action in scheduling a hearing for consideration of the proposed ordinance and map on Janu-

---

1. Minutes for the supervisors' meetings held in July through November 2001 lack any reference to significant consideration of the ordinance by the supervisors. For instance, the August 13, 2001 and September 10, 2001 minutes reflect a citizen's question to the supervisors as to the status of the ordinance. Unfortunately, the minutes fail to reflect whether the supervisors ever answered that citizen's inquiry. Additionally, during the September 10, 2001 meeting, the planning commission asked, "what they were to review on the zoning ordinance, the whole ordinance or just county comments." Once again, the minutes do not reflect an answer to the question.

ary 14, 2002. At the January 7, 2002 public meeting, the supervisors cancelled the January 14, 2002 public hearing. The supervisors also approved a motion sending the ordinance to the planning commission for comment. On January 22, 2002 the planning commission voted to approve the proposed ordinance, however, voted to disapprove the proposed zoning map.

On January 28, 2002 the supervisors held a special meeting for the "sole purpose of setting a date for the zoning hearing." Supervisors' meeting minutes, January 28, 2002. At that meeting, Supervisor Worley made a motion to set a zoning hearing meeting for March 4, 2002 at the York Springs Fire Hall at 7 p.m. to allow the public to give comment on the proposed zoning map and ordinance. *Id.* The motion was seconded and the supervisors duly approved it. On February 15, 2002, the supervisors published an advertisement in the *Gettysburg Times* providing notice of the March 4, 2002 meeting.[2]

---

2. The February 15, 2002 advertisement in the *Gettysburg Times* read as follows:

"Notice

"Notice Is Hereby Given that the Board of Supervisors of Latimore Township, Adams County, Pennsylvania will hold a public hearing to consider a proposed amendment, and the adoption thereof, to the Latimore Township Zoning Ordinance on Monday, March 4, 2002 at 7 p.m. The public hearing will be held at the York Springs Fire Company located at 312 Main Street, York Springs, PA. A copy of the proposed zoning ordinance amendment may be examined at the Latimore Township Municipal Building located at 559 old U.S. Route 15, York Springs, PA. The proposed amendment may be examined without charge at said municipal building or obtained for the cost thereof from the municipality.

"Board of Supervisors, Latimore Township, Adams County, Pennsylvania

"By: Ron Turo, Esquire, Township Solicitor"

Thereafter, on February 22, 2002 the supervisors published three additional advertisements in the *Gettysburg Times* concerning the March 4, 2002 public hearing.[3] On

---

3. The February 22, 2002 *Gettysburg Times* contained three advertisements. The first one read as follows:

"Notice

"Notice is hereby given that the Board of Supervisors of Latimore Township, Adams County, Pennsylvania will hold a special meeting for the purpose of considering and/or adopting a zoning ordinance amendment on Monday, March 4, 2002 at 7 p.m. at the York Springs Fire Company, 312 Main Street, York Springs, Pennsylvania.

"Board of Supervisors, Latimore Township, Adams County, Pennsylvania

"By: Ron Turo, Esquire, Township Solicitor, 28 South Pitt Street, Carlisle, PA 17013, (717) 245-9688"

The second advertisement read as follows:

"Notice

"Notice Is Hereby Given that the Board of Supervisors of Latimore Township, Adams County, Pennsylvania will consider a proposed amendment, and the adoption thereof, to the Latimore Township Zoning Ordinance on Monday, March 4, 2002, at 7 p.m., at the York Springs Fire Company located at 312 Main Street, York Springs, PA. A copy of the proposed zoning ordinance amendment may be examined at the Latimore Township Municipal Building located at 559 old U.S. Route 15, York Springs, PA. The proposed amendment may be examined without charge at said municipal building or obtained for the cost thereof from the municipality.

"A summary of the proposed amendment and its provisions are as follows:

"An ordinance permitting, prohibiting, regulating, restricting and determining the uses of land and water courses; the size, height, bulk, location erection, construction, repair, maintenance, alteration, raising, removal and use of structures; the areas and dimensions of land to be occupied by uses and structures; the density of population and intensity of uses; and providing for the administration and enforcement thereof within the Township of Latimore.

"Article I provides for the purpose of the ordinance, a zoning officer, and a zoning hearing board.

February 25, 2002 the supervisors once again published an advertisement in the *Gettysburg Times*.[4]

Signs advertising the March 4, 2002 hearing were posted at approximately 30 locations in Latimore Town-

"Article II provides the definitions of terms used throughout the ordinance.

"Article III lists the seven zoning districts and boundaries thereof throughout the township.

"Article IV contains the district regulations for all districts to include the basic use regulations and basic spatial regulations for each district.

"Article V includes general regulations applicable to all districts, to include among other regulations, buffering, parking, noise and signs.

"Article VI contains use regulations applicable to the entire township and for each of the specific uses set forth in the various zoning districts.

"Article VII contains specific regulations for mobile home parks to include use, spatial requirements and site improvements.

"Article VIII contains regulations for planned residential development to include review and approval procedures, use and spatial requirements.

"Article IX provides for the creation of a zoning hearing board, appointment of board members, procedures and other relevant information.

"Article X provides for the administration of the ordinance by appointment of a zoning officer setting forth the powers and duties thereof.

"Article XI provides for the enforcement of the zoning ordinance to include the requirement for zoning permits, application procedures, penalties for violation, and enforcement remedies.

"Article XII provides procedures for amendments to this ordinance and the validity and severability thereof.

"Board of Supervisors, Latimore Township, Adams County, PA

"By: Ron Turo, Esquire, Township Solicitor"

The third advertisement read as follows:

"Notice

"Notice Is Hereby Given that the Board of Supervisors of Latimore Township, Adams County, Pennsylvania will hold a public hearing to consider a proposed amendment, and the adoption thereof, to the Latimore Township Zoning Ordinance on Monday, March 4, 2002 at

ship on February 24, 2002. The exact locations of the postings are set forth on an exhibit which was made part of the record. All parties agree that at least one property of appellants, Everett and Olive Weiser, was not posted.

On February 26, 2002, the planning commission, at its regularly scheduled meeting, approved a motion stating: "that it is a sense of the planning commission that the zoning ordinance we adopted in January 2002 is consistent with the comprehensive plan for Latimore Township . . . ." Planning commission meeting minutes, February 26, 2002. On March 4, 2002 the Adams County Office of Planning and Development submitted correspondence to the supervisors indicating its comment on the ordinance. On March 4, 2002 the supervisors conducted the public hearing at the York Springs Fire Hall. That same date, they voted to adopt the legislation.[5]

---

7 p.m. The public hearing will be held at the York Springs Fire Company located at 312 Main Street, York Springs, PA. A copy of the proposed zoning ordinance amendment may be examined at the Latimore Township Municipal Building located at 559 old U.S. Route 15, York Springs, PA. The proposed amendment may be examined without charge at said municipal building or obtained for the cost thereof from the municipality.

"Board of Supervisors, Latimore Township, Adams County, PA

"By: Ron Turo, Esquire, Township Solicitor"

4. This February 25, 2002 advertisement contains identical language to the second advertisement set forth in footnote 3, *supra.*

5. Interestingly, although all public notices indicated the hearing was scheduled for 7 p.m., the transcript from the meeting reflects that it commenced at 9:50 p.m. That transcript is noticeably absent of any public comment. The transcript reflects that the chairman convened the "special meeting that we had advertised to consider the adoption of the proposed zoning amendment and amendment map." Tr., p. 2, March 4, 2002. The transcript then immediately reflects a motion by Supervisor Dost "that we adopt the proposed amended zoning ordinance as submitted by the Latimore Township Planning Committee

On April 1, 2002 the appellants filed a procedural challenge to the enactment of the March 2002 ordinance pursuant to section 909.1(a)(2) of the Pennsylvania Municipalities Planning Code, P.S. title 53, §10101 (West 1997). The Latimore Township Zoning Hearing Board conducted an evidentiary hearing on May 23, 2002. After testimony at the hearing, the hearing was continued until June 27, 2002 for the purpose of the introduction of additional evidence. On August 9, 2002, the board issued its written decision denying the appeal.

The appellants have now filed a timely appeal to this court. In their appeal, they raise a number of procedural challenges to the adoption of the ordinance. They further argue that the board erred, as a matter of law, in treating the ordinance as an amendment to the 1987 ordinance rather than as an adoption of a new ordinance.[6]

-----

[sic] and the proposed amended zoning map as submitted by the Latimore Township Supervisors . . . ." *Id.* After brief comment by Supervisor Dost and Chairman Worley, the motion passed 2-0. The third supervisor, Randall Fishel, was absent from the meeting. The record is completely absent of any indication that public comment occurred at the March 4, 2002 public hearing.

6. Following argument in this matter, the appellants filed a motion requesting the court to consider additional evidence. The appellants requested the court to open the record and consider the Latimore Township zoning map which the supervisors filed with the Adams County Law Library. The zoning map filed with the law library appears to be significantly different from the zoning map Latimore Township adopted. The appellants argued the significance of this evidence in light of section 610 of the MPC which provides that where the full text of an ordinance or amendment is not set forth in the public notice (as is currently the case) then an attested copy of the proposed ordinance shall be filed in the county law library. See P.S. title 53 §10610 (West 1997). Essentially, the appellants argue that the zoning map available for public inspection at the Adams County Law Library was different than the zoning map the supervisors adopted. Both the board

In analyzing the issues before the court, we must be mindful that when a trial court does not hear any additional evidence in deciding a land use appeal, the scope of review is whether the board committed an abuse of discretion or an error of law. *Hertzberg v. Zoning Board of Adjustment of City of Pittsburgh*, 554 Pa. 249, 256, 721 A.2d 43, 46 (1998). An abuse of discretion will only be found where the board's findings are not supported by substantial evidence. *Larsen v. Zoning Board of Adjustment of City of Pittsburgh*, 543 Pa. 415, 421, 672 A.2d 286, 288 (1996). Our appellate courts have defined "substantial evidence" to mean such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 555, 462 A.2d 637, 640 (1983).

---

and the supervisors objected to the presentation of additional evidence arguing that section 610 requires only a copy of the ordinance and not a copy of the zoning map. Thus, they allege to have been in compliance with the ordinance. They further argue that the appellants' argument raises a new ground for appeal which has not previously been raised and, therefore, waived. See generally, *Perin v. Board of Supervisors of Washington Township*, 128 Pa. Commw. 313, 563 A.2d 576 (1989).

I find the initial argument to be frivolous in light of the clear language of the Latimore Township Zoning Ordinance which makes the zoning map a part of that ordinance. See 2002 ordinance §302. Additionally, although it is somewhat distressing that public officials would disseminate for public consumption a zoning map containing designations different than that which was adopted, in light of my opinion in this matter it is unnecessary to consider the appellants' proposed additional evidence nor address the appellee's issue of waiver. Since the current record is sufficient to determine that both errors of law and an abuse of discretion has occurred, it is unnecessary to consider the appellants' additional evidence. Therefore, the appellants' motion to supplement the record is denied.

Before addressing the appellants' procedural challenge, it is necessary to address the appellants' second issue and make a determination as to which procedure the municipality was required to follow in adopting the ordinance. The landowners argue that the board committed an error of law in treating the ordinance as an amendment to the existing 1987 ordinance rather than as an adoption of a new ordinance. This determination is critical since the MPC distinguishes the procedures between adoption of a new ordinance and amendment of an existing ordinance. Compare P.S. title 53, §§10607, 10608 (West 1997, 2003) with P.S. title 53, §10609 (West 2003). This issue appears to be one of first impression in this Commonwealth.

The board determined that the supervisors' legislative action was an amendment to the existing ordinance. In this regard, the board found that "the evidence is simply overwhelming." Bd. conclusion of law, ¶2, August 9, 2002. The board's determination was largely based on the supervisors' and the Adams County planning department's description of the legislation as an amendment. See generally, *id.* The board also concluded, as a matter of fact, that the legislation "change[d] no more than five percent of the zoning ordinance." Bd. finding of fact, ¶5, August 9, 2002.[7]

Although the board concluded that the evidence was overwhelming that the legislation was an amendment to

---

7. Although the board's decision references support in the zoning hearing transcript for this proposition, a review of the transcript at the locations cited by the board reflect argument of counsel and not sworn testimony. Both ordinances, however, have been made part of the record and will serve as the basis for my analysis.

the current ordinance, my review of the record leads to the opposite conclusion. The record is unequivocally clear that the first indication that the legislation was being treated as an amendment is found at the January 28, 2002 supervisors' meeting. Prior to that date, both the minutes of the planning commission and the supervisors consistently reference the legislation as a "Zoning ordinance." However, on January 28, 2002, just 35 days prior to the supervisors' adoption of the legislation, the document begins to be described as an amendment.[8] Language in the subsequent correspondence from the Adams County Office of Planning and Development reinforces the designation of the legislation as an amended ordinance. Based upon this mysterious semantical transformation of January 28, 2002, the board concluded that the legislation was an amendment.

Initially, I note that while the particular designation of a piece of legislation is a relevant consideration, I cannot find that such designation, standing alone, constitutes substantial evidence of the legal meaning of the legislation. This point is illustrated by the reality that no matter how many times we call an "apple" an "orange," the fruit will forever remain an apple. To find otherwise would allow municipal agencies to easily avoid the mandates of our state legislature through semantic gamesmanship. Therefore, while a particular piece of legislation's designation is a consideration, it is not the controlling consideration. Rather, the ordinance must be

---

8. The January 28, 2002 minutes reflect that in response to a question as to whether the ordinance was a new ordinance, Supervisor Worley stated that it was not a new ordinance but rather an amendment.

examined both as to its legislative history and as to its effect. Indeed, both parties recognize the importance of reviewing that actual language of the legislative action. For instance, the township urges that "the proper focus for this court is on the magnitude of similarities between the 1987 and 2002 ordinances." Township Br., p. 5. While I concur with the township that a comparison of the two legislative acts is important, I do not concur with its conclusion that the differences between the two versions is "minimal." Comparison of the 1987 ordinance and the new legislation reveals substantial indications that the legislation is, in fact, a new ordinance.

The 2002 ordinance is comprised of approximately 175 sections while its predecessor, the 1987 ordinance, consisted of approximately 160 sections. This difference is insignificant in and of itself. However, a detailed review of the two ordinances reveals that only 58 sections, or approximately 33 percent of the sections, are identical between the ordinances. An additional 26 sections are virtually identical, however, the section number has been changed. The remaining 91 sections, or 52 percent of the sections, reflect some change to the language of the related section in the 1987 ordinance. Although I recognize that a number of these changes appear insignificant,[9] they constitute, nonetheless, distinctions between

---

9. For instance, section 602 of the 1987 ordinance reads as follows:
*"Section 602. Antique sales.*

"(A) Any outdoor display of articles for sale shall be at least 50 feet from any property or street line.

"(B) Adequate off-street parking must be provided.

"(C) A sign no larger than 50 square feet may be permitted; and shall be set back at least 40 feet from any street line."

the two ordinances. In fact, variances with clear substantive ramifications are prevalent throughout a comparison of the two ordinances.[10]

The comparable section in the 2002 ordinance, section 604, reads as follows:

"*Section 604. Antique sales.*

"(A) Any outdoor display of articles for sale shall be at least 50 feet from any property or street line.

"(B) Adequate off-street parking must be provided *as required in section 513 of this ordinance.*

"(C) A sign no larger than 50 square feet may be permitted and shall be set back at least 40 feet from any street line." 2002 ordinance, §604. (emphasis added)

While these sections are arguably substantially similar, it is equally clear that these sections contain different language. In light of the pronouncements from our appellate courts that every word in an ordinance has meaning, see generally, *Borough of Pleasant Hills v. Zoning Board of Adjustment of Borough of Pleasant Hills,* 669 A.2d 428, 430 (Pa. Commw. 1995), one might argue that the distinction between the two ordinances, while semantically insignificant, has meaningful legal repercussions. For similar distinctions in form between the two ordinances review and compare, among others, the following sections: 1987 ordinance, §§605, 606 and 612 with 2002 ordinance, §§607, 608 and 616. In addition, there is a significant amount of clearly substantive variances between the ordinances. Examples of this may be found in sections 802 and 803 of the 2002 ordinance (relating to applicable time periods for review and approval of planned residential development submissions). The 1987 ordinance, §802(A) provides: "The board of supervisors, within *30* days following the conclusion of the public hearing, shall, by official written communication, to the developed, [sic] either: . . . ." 1987 ordinance, §802(A). (emphasis added) The comparable section in the 2002 ordinance reads as follows: "The board of supervisors, within *60* days following the conclusion of the public hearing, shall, by official written communication to the developer: . . . ." 2002 ordinance, §802(A). (emphasis added) Both sections contain a number of other time periods which are different between the two ordinances.

10. Compare section 514(A)(2) of the 1987 ordinance (no off-street parking, loading or unloading facilities shall be located less than *three*

While a comparison of the less than obvious distinctions between the ordinances is instructive, the true nature of the 2002 legislative action becomes apparent when considering the obvious differences between the two documents. The 2002 ordinance consists of seven distinct zoning districts compared to just five districts in the 1987 ordinance. Specifically, the zoning districts in the 2002 ordinance for agricultural conservation-2 and Lake Meade district do not have a similar counterpart in the 1987 ordinance. Although four of the districts in either ordinance share common titles, an in-depth review of the basic use regulations for each of those districts indicates substantive variances in the respective ordinances. For instance, the residential-agricultural district in the 1987 ordinance allowed for 10 permitted uses and 10 supplemental uses. However, the residential-agricultural district under the 2002 ordinance allows for 12 permitted uses and seven supplemental uses.[11] The same distinction is apparent in the agricultural conservation

---

feet from any property line) with section 513(A)(2) of the 2002 ordinance, (no off-street parking, loading or unloading facility shall be located less than *10* feet from any property line); section 508 of the 1987 ordinance with section 507 of the 2002 ordinance (substantial differences in the organization of the content of these sections); section 433(B)(3) of the 1987 ordinance (providing for rear yard in a commercial-industrial district of at least *10* feet) with section 453(B)(3) of the 2002 ordinance (providing rear yard requirements in a commercial-industrial district of at least *50* feet). A side-by-side comparison of the ordinances reflects a number of similar distinctions which are too abundant to list in this opinion.

11. The 2002 zoning ordinance omits, inter alia, public museums, cemeteries and planned residential developments as supplemental uses compared to the 1987 ordinance which permitted such supplemental uses.

districts;[12] the residential-suburban districts;[13] the commercial-industrial district;[14] and the flood plain district.[15] Accordingly, in addition to the two districts in the 2002 ordinance which have no counterpart in the 1987 ordinance, the five other districts which share similar titles have different substantive provisions.

Similarly, there is substantial difference to the definition section included in the respective ordinances. See 1987 ordinance, §202; 2002 ordinance, §202. The number of words defined in the 2002 ordinance is more than double the number of definitions included in the 1987 ordinance.[16] In addition to the increase in the number of defined terms, the 2002 ordinance contains a substantial number of provisions which do not have a mate in the

---

12. The 1987 ordinance allows seven permitted uses and eight supplemental uses in the agricultural-conservation district compared to the 2002 ordinance which allows 10 permitted uses and six supplemental uses.

13. The 1987 ordinance allows six permitted uses and nine supplemental uses in the residential-suburban districts compared to the 2002 ordinance which allows seven permitted uses and seven supplemental uses in the similar district.

14. The 1987 ordinance provides for 24 permitted uses and 13 supplemental uses in a commercial-industrial district compared to the 2002 ordinance which provides for 27 permitted uses and 18 supplemental uses in a similar district.

15. Section 442(A)(5)(d) of the 1987 ordinance allows accessory industrial and commercial uses as a permitted use in the flood plain district compared to section 462 of the 2002 ordinance which does not include such a permitted use.

16. The appellants' brief indicates that 126 out of 230 definitions in the 2002 ordinance either do not exist or contain different definitions from the 1987 ordinance. My own count reflects that approximately 113 of the 215 definitions included in the 2002 ordinance were not included in the 1987 ordinance.

1987 ordinance. These provisions are most apparent in article six of the 2002 ordinance (relating to use regulations),[17] however, exist in other sections scattered throughout the 2002 ordinance.[18]

Finally, the zoning map attached to the 2002 ordinance provides for a commercial-industrial district significantly less than the commercial-industrial district provided in the 1987 ordinance. The 2002 map also differs from the 1987 map in the northeast corner of the township, the southeast corner of the township and the area near Latimore Village (located in the western portion of the township). Under these circumstances, the board's finding that "[t]he amendments change no more than five percent of the zoning ordinance," Bd. finding of fact, ¶5, is not supported by the record. Thus, if this decision was based on the magnitude of similarities or dissimilarities between the 1987 and the 2002 ordinances, as is suggested by the township, the appellants' position has merit.

While I agree that the similarities and dissimilarities between the ordinances are a proper consideration in determining whether the legislation is an amendment or a new ordinance, I do not believe that determination alone to be controlling. Rather, I also look to the express language of the ordinance.

---

17. The 2002 ordinance contains 44 separate sections under article six (use regulations) compared to the 35 sections contained in article six of the 1987 ordinance (relating to use regulations).

18. See generally, 2002 ordinance, §§513(C)(3); 513(F) through (Q); 518(C) (relating to commercial advertising signs) and 518(D)(2) (placing 100 square foot limit on all signs in Latimore Township).

The introductory paragraph to the 2002 ordinance reads as follows:

"The Board of Supervisors of the Township of Latimore, County of Adams, Commonwealth of Pennsylvania, by authority of and pursuant to the provisions of the . . . MPC, and any amendments and supplements thereto, *do hereby ordain as follows* . . . ." 2002 ordinance, p. 1. (emphasis added)

Similarly, in the general provisions of the 2002 ordinance, the following language is found: "[t]his ordinance is *enacted* for the following purposes . . . ." 2002 ordinance, §102. (emphasis added) Other sections in the ordinance provide for its amendment, see section 1201, and its interpretation, see section 1203. Importantly, section 1202 of the 2002 ordinance repeals all inconsistent ordinances. Finally, there is no confusion in the meaning of section 1205 of the 2002 ordinance which provides: "[t]his ordinance shall become effective on the 4th day of March, 2002. Enactment. Ordained and enacted this 4[th] day of March, 2002." Thereafter, the signature of two out of three supervisors follow and are attested by the township secretary.

Other than the word amended on the front cover of the ordinance, there is not a single reference in the 2002 ordinance that would indicate, or even imply, that the board's March 4, 2002 action was an amendment to the 1987 ordinance. Moreover, the record is absolutely void of any indication in the legislative history prior to January 28, 2002 that the legislation was being treated as an amendment. Rather, it was consistently referred to as a self-supporting ordinance.[19] It was not until less than two

---

19. The supervisors' brief contains an attachment consisting of a transcript of proceedings from an October 16, 2000 proposed zoning

months prior to the adoption of the legislation that the word "amendment" appeared in public notices concerning the legislation.[20]

Under these circumstances, I cannot agree with the township's position. Other than what the appellants have described as the "self-serving statements" of the supervisors, see appellants' br., p. 7, every other indication in the record is that the March 4, 2002 actions of the supervisors constituted the enactment of a new ordinance. Thus, I find that the board erred in treating this legislation as an amendment.

This interpretation is consistent with the limited statutory authority in this area. For instance, 1 Pa.C.S. §1951 (West 1995) provides guidance on the interpretation of amendatory statutes.[21] This section interprets the meaning of italics or underscored material which is commonly

---

map and proposed zoning ordinance public hearing. In doing so, the supervisors urge the court to recognize the transcript by judicial notice since they claim it is a matter of public record. Indeed, in considering the intent of legislation, the legislative history is an appropriate consideration when the words of legislation are not explicit. 1 Pa.C.S. §1921(c)(7) (West 1995). Interestingly, at that public hearing, the township solicitor made the following representation to the citizens: "The planning commission I'm sure is open to your suggestions. When they prepare a final document and forward it to us with a final map, then we will advertise an ordinance which would be this *new ordinance* and we would have another not a public hearing [sic] but there would be a regular meeting in order to decide if they wanted to pass the *new zoning ordinance*." Tr. p. 16, ll. 9-15, October 16, 2000. (emphasis added)

20. Incidentally, the make-up of the supervisors changed effective January 7, 2002.

21. The rules of statutory construction are applicable to municipal ordinances. *Wilkes-Barre Appeal,* 208 Pa. Super. 424, 429 n.2, 222 A.2d 499, 502 n.2 (1966).

associated with amendatory legislation. The 2002 ordinance is absent of any indications commonly associated with amendments.

The supervisors argue that their failure to follow typical legislative format in drafting this legislation is immaterial. Standing alone, I agree. For this court to adopt a "bright-line" rule that legislation will always be construed as a new ordinance where "typical" legislative format is not followed would ignore the reality of the abundance of Pennsylvania municipality amendatory legislation which ignores such a format. However, despite my rejection of such a "bright-line" test, the township's lack of conformity with the statutorily recognized practice is one of many factors indicating the true nature of this legislation. Interestingly, despite its noncompliance with general legislative format, the township has, in the recent past, enacted amendatory legislation which is quite distinct in form from the legislative actions taken on March 4, 2002. Latimore Township Ordinance Number 2000-01 (an ordinance amending the zoning ordinance) does not recite the entire ordinance which is being amended but rather references only the amendatory language. Notably, Ordinance Number 2000-01 specifies both in its title and its body that it is an amendment to a pending ordinance.[22]

---

22. On May 8, 2000, the supervisors enacted Ordinance Number 2000-01. Two of the three supervisors in office at that time were in office at the time of the March 4, 2002 legislation. The court takes judicial notice of this ordinance. 42 Pa.C.S. §6107 (West 2000); *Dream Mile Club Inc. v. Tobyhanna Township Board of Supervisors,* 150 Pa. Commw. 309, 314-15, 615 A.2d 931, 933-34 (1992). A copy of Ordinance Number 2000-01 is attached to this opinion.

It is apparent that the supervisors' legislative action of March 4, 2002 was the enactment of a new ordinance notwithstanding the township's last-minute attempts to designate the same as an amendment. Thus, the board committed an error of law in considering procedural issues concerning the adoption of the ordinance under the procedures set forth in P.S. title 53, §10609 (West 2003) (relating to the enactment of zoning ordinance amendments).

While this matter might normally be remanded to the board for its consideration of the legislation under P.S. title 53, §10608 (West 2003) (enactment of zoning ordinances), the same is unnecessary since, as set forth below, I find the supervisors' actions procedurally defective regardless of whether their actions are treated as an amendment or a new ordinance.

Sections 607 and 608[23] of the MPC sets forth the procedures for the preparation and enactment of a zoning ordinance. Generally, this legislation requires that the text and map of a proposed zoning ordinance be prepared by the planning agency of each municipality during the course of which the planning agency shall hold at least one public meeting pursuant to public notice. Thereafter, the planning agency shall forward the proposed zoning ordinance to the governing body. Before voting on the enactment of the zoning ordinance, the governing body is required to hold a public hearing pursuant to public notice. The vote on enactment shall be within 90 days after the last public hearing. Section 607 specifically provides that satisfaction of the requirements on

---

23. P.S. title 53, §§10607, 10608 (West 1997, 2003).

the planning agency are "a condition precedent to the validity of a zoning ordinance. . . ." P.S. title 53, §10607(d) (West 1997).

The MPC includes a specific definition for public notice. It reads:

" *'Public notice,'* notice published once each week for two successive weeks in a newspaper of general circulation in the municipality. Such notice shall state the time and place of the hearing and the particular nature of the matter to be considered at the hearing. The first publication shall not be more than 30 days and the second publication shall not be less than seven days from the date of the hearing." P.S. title 53, §10107 (West 2003).

The MPC places additional public notice requirements prior to the enactment of legislation affecting zoning. Specifically, section 610[24] provides:

"(a) Proposed zoning ordinances and amendments shall not be enacted unless notice of proposed enactment is given in the manner set forth in this section, and shall include the time and place of the meeting at which passage will be considered, a reference to a place within the municipality where copies of the proposed ordinance or amendment may be examined without charge or obtained for a charge not greater than the cost thereof. The governing body shall publish the proposed ordinance or amendment once in one newspaper of general circulation in the municipality not more than 60 days nor less than seven days prior to passage. Publication of the proposed ordinance or amendment shall include either the

24. P.S. title 53, §10610 (West 1997).

full text thereof or the title and a brief summary, prepared by the municipal solicitor and setting forth all the provisions in reasonable detail. If the full text is not included:

"(1) a copy thereof shall be supplied to a newspaper of general circulation in the municipality at the time the public notice is published.

"(2) An attested copy of the proposed ordinance shall be filed in the county law library[25] or the county office designated by the county commissioners, who may impose a fee no greater than that necessary to cover the actual cost of storing said ordinances." P.S. title 53, §10610 (West 1997).

Perhaps most noteworthy about these notice requirements is the intent of these provisions to provide notice and the opportunity to be heard to the landowners whose property rights may be affected by the proposed legislation. Additionally, notice requirements have the purpose of protecting the interest of the public in the legislative process. *Lower Gwynedd Township v. Gwynedd Properties Inc.,* 527 Pa. 324, 327, 591 A.2d 285, 287-88 (1991). The right of the public to participate in the enactment of municipal ordinances is so sacred that the courts have been consistent in holding that statutory publication requirements are mandatory and that ordinances adopted without strict compliance are void. *Id.* at 329, 591 A.2d

---

25. The Adams County Law Library contains a document entitled, "Latimore Township, Adams County, Pennsylvania, Proposed Zoning Ordinance, December, 2001." Enclosed within the ordinance is a zoning map. The zoning map included with the December 2001 ordinance is different than the zoning map included with the ordinance the supervisors adopted on March 4, 2002.

at 288. Implicit in this maxim is the core concept that in order for public interests to be protected, the public must be fairly alerted as to the subject matter of the pending legislation. Applying this principle to the current circumstances, I find that the notice was inadequate.

Although the board properly found that public notice had been published in a newspaper of general circulation in compliance with the time period set forth in the MPC, they erred in finding this notice sufficient. More specifically stated, although notice was timely given, the public was misled in regard to the nature of the pending legislation. Each of the notices described the pending legislation as a proposed amendment when, in fact, as discussed above, the legislation was an entirely new ordinance. The notice at issue is, at least, ambiguous if not intentionally misleading. Our appellate courts have consistently interpreted ambiguous notices in favor of property owners. *Valianatos v. Zoning Hearing Board of Richmond Township,* 766 A.2d 903 (Pa. Commw. 2001) (determining notice that the township would "consider proposed amendments" insufficient when purpose of hearing was to "enact" ordinance); *Kurren Appeal,* 417 Pa. 623, 208 A.2d 853 (1965); *Tinicum Township v. Tinicum Township Zoning Hearing Board,* 154 Pa. Commw. 476, 624 A.2d 232 (1993). I find, therefore, as a matter of law, that notice of a pending ordinance is insufficient when it incorrectly characterizes the nature of the pending legislation.

Equally fatal to the validity of the legislation when considered as a new ordinance is the board's factual finding that the legislation was "prepared by the governing body of Latimore Township and not by the planning

agency." Bd. finding of fact, ¶33.[26] The record supports the board's finding in this regard in that references in the legislative history show the ordinance being referred to the planning commission for comment rather than the planning commission forwarding the draft ordinance to the supervisors.[27] The significance of the supervisors' preparing this legislation rather than the planning agency is apparent in light of the clear statutory requirements set forth in the MPC. The MPC plainly indicates that "[t]he text and map of the proposed zoning ordinance . . . shall be prepared by the planning agency" rather than the "governing body." P.S. title 53, §10607(a) (West 1997). Moreover, compliance with this statute is mandatory since compliance is "a condition precedent to the validity of a zoning ordinance adopted pursuant to . . . [the MPC]." P.S. title 53, §10607(d) (West 1997). An ordinance which fails to comply with the mandated requirements of the MPC is invalid. See *Muhlenberg College v. Zoning Hearing Board of the City of Allentown,* 760 A.2d 443, 445 (Pa. Commw. 2000). Since the super-

---

26. Although the board characterizes this legislation as an amendment to the ordinance, the board's erroneous designation does not negate its factual conclusion that the subject legislation, by whatever name it may be called, originated in Latimore Township's governing body.

27. As previously mentioned in footnote 18, the township solicitor referred to the legislation as a new ordinance which the planning commission prepared. While this representation is contrary to the board's finding, the board is not required to accept it nor has committed an abuse of discretion if its factual reference in paragraph 33 is supported by substantial evidence in the record.

visors enacted an ordinance without complying with the MPC's mandated requirements, it is void.[28]

Although I have found that the supervisors' legislative action constituted an enactment of a new ordinance, that determination is not critical to the resolution in this matter since, even if the legislation is treated as an amendment, procedural defects in its enactment make it void.

If the legislation adopted by the supervisors is treated as an amendment, adoption of the ordinance must satisfy the requirements of section 609 of the MPC. Those requirements provide in relevant part that "[b]efore voting on the enactment of an amendment, the governing body shall hold a public hearing thereon, pursuant to

---

28. The appellants additionally argue that the ordinance is void since:

"(1) the planning commission failed to hold a public meeting pursuant to public notice as required by section 607(b) of the MPC; and

"(2) the planning commission did not present the draft zoning ordinance to the supervisors as required by section 607 of the MPC." Appellants' notice of appeal, p. 4.

In regard to the first of these issues, the record is barren of any indication that public notice of the planning commission meetings was provided. In light of the board's erroneous finding that the subject legislation was an "amendment" rather than the "enactment" of a new ordinance, the supervisors apparently did not address the issue. Accordingly, remand of the issue for an evidentiary finding in that regard would be appropriate if that was the sole issue presented. However, that was not the sole issue the appellants raised and, in light of the disposition set forth hereinabove, remand is unnecessary.

The second issue raised by the appellants in regard to procedural deficiencies in the enactment of the ordinance need not be addressed any further in light of the board's finding that the supervisors, rather than the planning commission, prepared the ordinance. It rationally follows that since, as a matter of fact, the supervisors prepared the ordinance, then there would be no need, or opportunity, for the planning commission to present the ordinance to the supervisors as required by section 607(c) of the MPC.

public notice." P.S. title 53, §10609(b) (West 2003). The MPC further provides that if the proposed amendment involves a change to the zoning map, "notice of said public hearing shall be conspicuously posted by the municipality at points deemed sufficient by the municipality along the tract to notify potentially interested citizens." *Id.* Posting of the affected tracts shall occur at least one week prior to the date of hearing. *Id.*

Appellants argue that the supervisors failed to comply with these requirements in that all tracts affected by the change to the zoning map were not properly posted.[29] In this regard, they indirectly challenge board finding of fact 11 wherein the board indicated that "the real properties of the appellants were posted on February 24, 2002." For the reasons set forth below, I find that the appellants' challenge has merit and that the board's finding is not supported by substantial evidence.

Uncontroverted testimony at the zoning hearing indicated that one tract of appellant Weiser's property was not posted. Tr. pp. 19-20. Additionally, Terry Rickert testified that although he was unsure as to whether his property was posted, he unequivocally expressed that there was only one tract posted in an area where two separate tracts of land were located. *Id.* at pp. 27-29. Apparently, the map which the parties were referencing at the zoning hearing, exhibit two, was a map which did not include the current subdivision of tracts of land as they existed at the time of the hearing. A complete reading of the hearing transcript, however, clearly indicates that land which

---

29. The appellants also question the timing of the township's public notices. After a thorough review of the record, I find this issue meritless and affirm the board's decision in this regard.

had been designated as a single tract on the map the board referenced at the hearing had subsequently been divided into two parcels of land. Appellant Weiser owns one parcel. Appellants Junkins and Rickert own the second parcel. Although the parties are uncertain as to which of these two tracts was posted, the record is clear that only one of the two was posted. See generally, testimony of M. Everett Weiser and Terry Rickert. A fair reading of the testimony of the township zoning officer, John Shambaugh,[30] not only fails to refute this testimony but, in fact, confirms the testimony. Tr. p. 119; Tr. exhibit 2.[31]

Finally, in considering this issue, the appellants point out a number of other areas throughout the township where the zoning map changed classifications of the zoning district, however, did not post the affected tracts. A casual comparison of the zoning map adopted with the 1987 ordinance with the adopted zoning map, Tr. exhibit two, confirms the appellants' representations. For instance, a large area in the southeast corner of Latimore Township had the zoning classification changed from residential-agricultural under the previous ordinance to residential-Lake Meade. Despite this change in zoning districts, however, testimony at the board hearing confirmed that this area was not posted at all. See Tr. exhibit

30. Although the record does not identify Mr. Shambaugh, the court is aware of Mr. Shambaugh's status as the zoning officer of Latimore Township due to other proceedings before this court.

31. The board claims that "Mr. Shambaugh posted notice of the March 4, 2002 public hearing along the affected tracts." Bd. conclusion of law, ¶4. In support thereof, the board references page 93 of the zoning hearing transcript. My reading of the transcript at that page fails to reveal any testimony supporting such a broad statement.

2.[32] Similarly, areas in the northeast corner of the township, the southcentral portion of the township and the eastern portion of the township near Latimore Village appear to have undergone changes of the zoning district pursuant to the March 4, 2002 legislation with little, if any, posting of the affected tracts. The record not only reveals that the township failed to post all of the affected tracts throughout the township but, more specifically, failed to post each of the tracts the appellants owned. Any such implication by board finding of fact 11 is not supported by substantial evidence.

The township, perhaps in recognition of the testimony before the board, essentially concedes in its brief that each and every tract of property affected by the change in the zoning map was not posted. It argues, however, that the MPC does not contain such a requirement. Rather, the township claims that notice is sufficient if it is posted at points deemed sufficient by the municipality to notify potentially interested citizens. In formulating its argument, the township correctly cites section 609 of the MPC which contains such language. P.S. title 53, §10609 (West 2003). Unfortunately for the township, the Commonwealth Court, in interpreting the language of this section, placed a much greater duty upon the township. See *Johnson v. Zoning Hearing Board of Stroud Township,* 144 Pa. Commw. 479, 601 A.2d 927 (1992).

In *Johnson,* the Commonwealth Court considered the legality of posting notices to a change in a zoning map

---

32. The March 4, 2002 legislation maintained the designation of zoning districts classified as residential-agricultural. The residential-Lake Meade district is an entirely new zoning district rather than simply having its designation changed.

under former section 609 of the MPC.[33] The appellants in that case owned residential property affected by a change in a Stroud Township zoning map. Although at least 200 notices were posted throughout Stroud Township, and in fact, the appellants' property was posted, the municipality failed to post on the perimeter of the entire tract the appellants owned. The Commonwealth Court, recognizing the importance of providing notice, held that the procedures for notice in the enactment of ordinances "must be strictly followed in order for an ordinance to be valid." *Id.* at 484, 601 A.2d at 929. Just as importantly, the *Johnson* court found it immaterial that the property owners had received actual notice. "If a published notice fails to satisfy the statutory requirements, the fact that members of the public, or even the appellants themselves, appeared at the hearing does not breathe life into an otherwise void ordinance." *Id.* (quoting *Gwynedd Properties Inc.,* 527 Pa. at 329, 591 A.2d at 287).

Admittedly, the *Johnson* court was interpreting language in section 609(b) of the MPC which has subse-

---

33. Prior to 1994, section 609(b) of the MPC provided in relevant part: "notice of said public hearing shall be conspicuously posted by the municipality at points deemed sufficient by the municipality along *the perimeter of* the tract to notify potentially interested citizens. The affected tract or area shall be posted at least one week prior to the date of the hearing." P.S. title 53, §10609(b) (West 2003). A 1994 amendment to the section deleted the language "the perimeter of." Interestingly, section 609(b) of the MPC, which was effective at the time of the township's legislative action in this matter, has subsequently been amended. On January 11, 2002, the section was amended to require a municipality to provide notice prior to the adoption of a zoning map change to all real properties listed on the tax rolls which are affected by the change. Notice is to be given by first class mail to each such property owner. This subsequent legislative action confirms the high priority which Pennsylvania courts place upon notice requirements.

quently been deleted by legislative act. However, implicit in *Johnson* are a number of principles which provide guidance. Primary among them is the recognition that section 609(b) of the MPC requires each separate tract to be posted. Secondly, actual notice to a property owner by the township is of little significance if the procedures set forth in the MPC are not strictly followed. Applying this instruction leads me to conclude that the township's legislative act of March 4, 2002 is void.

As mentioned above, the record is unequivocal that all affected tracts in Latimore Township were not posted. Although the appellants claimed to have actual notice of the hearing, the testimony of Terry Rickert is revealing. At hearing, the following exchange occurred:

"Solicitor Turo: Question: Mr. Rickert, you did not come to the public hearing on March 4, 2002 at the fire house? . . .

"Mr. Rickert: I was there. I was notified about it two days beforehand.

"Question: You did show up?

"Answer: Yes, with little or no preparation.

"Question: You did testify?

"Answer: With little or no preparation, yes, I did.

"Mr. Turo: That's fine.

"The witness: I would have very much liked to have had more preparation time." Tr. pp. 29-30.

Notice provisions concerning the enactment of municipal ordinances are of such critical importance that compliance must be absolute. "The public's interest in the legislative process demands no less," *Gwynedd Properties,* 527 Pa. at 329, 591 A.2d at 288, and the township

has presented no valid reason to abandon this general rule. The board, in construing this rule to the contrary, has committed an error of law.[34]

I find the appellants' second argument equally persuasive. The appellants argue that although the township advertised the March 4, 2002 hearing, the public notice was insufficient in that it did not specify the particular nature of the matter to be considered at the hearing. In support thereof, the appellants direct the court's attention to section 107(a) of the MPC which contains such a requirement in the definition of public notice. Additionally, section 610 of the MPC requires that when the full ordinance is not published, any summary of the ordinance must set forth "all the provisions in reasonable detail." P.S. title 53, §10610(a) (West 1997). I find the township's efforts in this regard to be insufficient.

An analysis of this issue necessarily leads into discussion of whether or not the March 4, 2002 legislative act was a new ordinance or an amendment. Since that issue has been exhaustively discussed hereinabove, I will not repeat it with the exception that the February 22, 2002 legal advertisement and the February 25, 2002 legal advertisements speak in language consistent with the adoption of a new ordinance. Regardless, a thorough review of those publications fails to provide any insight as to

---

34. Although the township has argued that the 30 notices placed throughout the township were conspicuously posted at points deemed sufficient by the municipality in an effort to provide sufficient notice, I find this argument curious. Interestingly, the Weiser properties which were posted appear to have been farmland, Tr. pp. 19-21, while the Weiser tract which was not posted housed a retail establishment, the location of which is described by Mr. Weiser as follows: "I think most people know where our retail market is." Tr. p. 107.

the major thrust of the March 4, 2002 legislation. Specifically, the legal advertisements neglect to mention that the location of zoning districts in the Township were proposed to be changed. Thus, the prime objective to be accomplished by the legislation is simply ignored when notifying the public as to the subject matter of the pending legislation.

Appellate guidance is sparse in dealing with the issue of how accurate and specific public notice must be. However, the Commonwealth Court recently struck down the enactment of an ordinance where the public notice indicated the hearing would be held to "consider" the proposed legislation rather than "enact" the legislation as was ultimately accomplished at the respective hearing. *Valianatos,* 766 A.2d at 906. In doing so, the Commonwealth Court reaffirmed the consistent approach of our appellate courts in interpreting ambiguous notices in favor of property owners.

Instantly, the board found as a matter of fact that the legislation at issue "created the agricultural conservation II (AC-II) district, a new zoning district, and reconfigured the township's zoning map by reducing the size of the commercial-industrial (CI) district along the so-called Route 15 corridor." Bd. finding of fact, ¶7. Additionally, the board quoted the testimony of the supervisors' chairman that as a result of the legislation "changes would be made to the township's zoning map as well as the township's current . . . ordinance." *Id.* at ¶24. Although the board had no difficulty in summarizing the highlights of the proposed legislation, for some inexplicable reason, the public notice advertising the township hearing fails to even imply a change in the zoning dis-

tricts or map. While I am sensitive to the argument that my interpretation is "splitting hairs," where the township drafts the public notices and significant property rights are affected, substantial compliance with the notice requirements is insufficient. Any ambiguity in the notice must be construed against the township. See generally, *Valianatos,* 766 A.2d at 906-907. Since the notice requirements followed by the township are fatally defective, the township legislative action is void ab initio.

For the foregoing reasons, the attached order is entered.

## ORDER

And now, August 1, 2003, the Latimore Township Zoning Hearing Board's decision is vacated. The Latimore Township Zoning Ordinance enacted on March 4, 2002, is void ab initio.

---

## ORDINANCE NO. 2000-01

An Ordinance of the Township of Latimore, Adams County, Pennsylvania, Amending the Zoning Ordinance (Ordinance of February 5, 1987, no. 1987-15) by Changing the Minimum Lot Areas Required for Dwelling Units Located in the Agricultural-Conservation District, the Residential-Agricultural District and the Residential-Suburban District, Which Minimum Lot Areas Are Dependent on the Type of Sewage Disposal System Used and Repealing Ordinance 1998-5

The Township of Latimore, Adams County, Pennsylvania, hereby enacts and ordains as follows:

*Section 1.* Section 403 (Basic spatial regulations) of the Latimore Township Zoning Ordinance, subsections A.1.a. and b. (Lot requirements, area), are amended to read in their entirety as follows:

"a. The lot area shall not be less than one acre for a lot for which an individual sewage system utilizing a gravity distribution system has been approved by the township's sewage enforcement officer and which meets all the requirements of the Pennsylvania Department of Environmental Protection.

"b. The lot area shall not be less than 2.99 acres gross area for a lot for which any type of sewage system other than an individual sewage system utilizing a gravity distribution system has been approved by the township's sewage enforcement officer and which meets all the requirements of the Pennsylvania Department of Environmental Protection."

*Section 2.* Section 413 (Basic spatial regulations) of the Latimore Township Zoning Ordinance, subsections A.1.a. and b. (Lot requirements, area), are amended to read in their entirety as follows:

"a. The lot area and lot area per dwelling unit shall not be less than one acre for a lot for which an individual sewage system utilizing a gravity distribution system has been approved by the township's sewage enforcement officer and which meets all the requirements of the Pennsylvania Department of Environmental Protection.

"b. The lot area and lot area per dwelling unit shall not be less than 2.99 acres gross area for a lot for which any type of sewage system other than an individual sewage system utilizing a gravity distribution system has been approved by the township's sewage enforcement officer

and which meets all the requirements of the Pennsylvania Department of Environmental Protection."

*Section 3.* Section 423 (Basic spatial regulations) of the Latimore Township Zoning Ordinance, subsections A.1.c. (1) and (2). (Lot requirements, area), are amended to read in their entirety as follows:

"(1) The lot area and lot area per dwelling unit shall not be less than one acre for a lot for which an individual sewage system utilizing a gravity distribution system has been approved by the township's sewage enforcement office and which meets all the requirements of the Pennsylvania Department of Environmental Protection.

"(2) The lot area and lot area per dwelling unit shall not be less than 2.99 acres gross area for a lot for which any type of sewage system other than individual sewage system utilizing a gravity distribution system has been approved by the township's sewage enforcement officer and which meets all the requirements of the Pennsylvania Department of Environmental Protection."

All ordinances or parts of ordinances inconsistent with this amending ordinance are repealed including specifically Ordinance Number 1998-5.

All other parts of the ordinance not inconsistent with this amending ordinance are ratified and confirmed.

Enacted and ordained this 8 day of May, 2000.

Township of Latimore

By: /s/Chairman Randall W. Fishel

By: /s/Vice Chairman Daniel T. Worley

By: /s/Supervisor Charles J. Dove

Attest:

/s/Secretary Joanna D. Zepp